# Commonwealth *vs.* Casey L. Cole.

Plymouth. November 5, 2013. - June 11, 2014.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Community Parole Supervision for Life. Sex Offender. Sex Offender Registration and Community Notification Act. Constitutional Law,* Separation of powers, Sentence, Sex offender, Parole, Severability. *Due Process of Law,* Sentence, Sex offender, Parole. *Parole. Imprisonment,* Parole. *Practice, Criminal,* Sentence, Parole. *Statute,* Validity, Severability.

Discussion of community parole supervision for life (CPSL) and the differences between CPSL and parole. [297-301]

This court concluded that the parole board's authority and duty under G. L. c. 127, § 133D (c), to impose mandatory periods of imprisonment for a violation of a condition of community parole supervision for life (CPSL), thereby increasing the original term of imprisonment imposed by the sentencing judge, grants to the parole board (an entity of the executive branch) a quintessential judicial power (i.e., the power to determine whether a defendant should be sentenced to additional terms of imprisonment) and therefore violates art. 30 of the Massachusetts Declaration of Rights. [301-308] Cordy, J., concurring.

This court concluded that the provisions of G. L. c. 127, § 133D (c), which set forth the sentences to be imposed on a finding by the parole board of a violation of a condition of community parole supervision for life (CPSL) in violation of art. 30 of the Massachusetts Declaration of Rights, were so entwined with the otherwise valid provisions of § 133D that the Legislature could not have intended that CPSL would survive without the parole board having any means of enforcing its conditions; therefore, this court ordered that CPSL sentences, whether imposed pursuant to G. L. c. 6, § 178H (a), or G. L. c. 265, § 45, be vacated. [308-310] Cordy, J., dissenting.

Statement that the Commonwealth, in its exercise of discretion and sound judgment following this court's order vacating sentences of community parole supervision for life, should not seek resentencing where it is apparent that resentencing necessarily would increase the aggregate punishment of a defendant and thereby violate the defendant's double jeopardy rights. [310-311]

This court vacated a sentence of community parole supervision for life that had been imposed on the criminal defendant by the parole board in violation of art. 30 of the Massachusetts Declaration of Rights, where resentencing was not a viable option, in that the defendant had served the probationary sentence imposed on him and, therefore, any resentencing necessarily would violate principles of double jeopardy by increasing the aggregate punishment imposed under the original sentence. [311-312]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on March 22, 2010.

A motion to correct sentence, filed on July 12, 2012, was considered by *Mary L. Amrhein*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Beth L. Eisenberg*, Committee for Public Counsel Services (*Laura M. Banwarth* with her) for the defendant.

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

*Jeffrey G. Harris, Margaret Fox, Elizabeth A. Lunt, & Patricia Garin*, for Massachusetts Association of Criminal Defense Lawyers & another, amici curiae, submitted a brief.

GANTS, J. The issue presented on appeal is whether community parole supervision for life (CPSL) violates our separation of powers doctrine, articulated in art. 30 of the Massachusetts Declaration of Rights, by improperly delegating to the parole board, an entity of the executive branch, the exercise of the judicial power to impose sentences. We conclude that CPSL grants to the parole board a quintessential judicial power, the power to determine whether a defendant should be sentenced to additional terms of imprisonment, and therefore violates art. 30. Because the imposition of a CPSL sentence by the parole board constitutes an unconstitutional violation of our separation of powers doctrine, the defendant's CPSL sentence must be vacated.[1]

*Background.* The defendant, Casey Cole, was classified as a level two sex offender by the Sex Offender Registry Board (SORB), and therefore was required to register as a sex offender and provide SORB with notice of any change of address. See G. L. c. 6, § 178E (*h*). See also G. L. c. 6, §§ 178C-178P. On March 22, 2010, a complaint issued charging the defendant with failing to provide notice of a change of address, as a level two or level three sex offender, in violation of G. L. c. 6, § 178H (*a*) (1). Among the potential penalties identified in the complaint was "lifetime community parole supervision."

On August 23, 2011, the defendant pleaded guilty to this

---

[1]We acknowledge the amicus brief submitted by Massachusetts Association of Criminal Defense Lawyers and Prisoners' Legal Services of Massachusetts.

offense in District Court, admitting that he was a level two offender; that he had identified an address in West Bridgewater as his primary residence when he registered in July, 2009; and that he had failed to provide the police with notice of his change of address when he moved to Taunton. The judge sentenced the defendant to six months of supervised probation and CPSL.[2]

The defendant completed his probation term without incident, and at the end of February, 2012, he began his CPSL sentence. On July 12, 2012, the defendant filed a motion to correct his sentence pursuant to Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001).[3] He claimed that he should not have been sentenced to CPSL for several reasons, including that the sentence is unconstitutional under the separation of powers doctrine.[4]

The judge denied the defendant's motion without a hearing and without addressing the constitutional claims.[5] The defendant

---

[2]The judge also required the defendant to register and comply with the regulations of the Sex Offender Registry Board (SORB) and to submit to deoxyribonucleic acid sampling. These requirements are not contested here.

[3]Previously, on April 5, 2012, the defendant had filed an untimely motion to revise and revoke his sentence, which was denied without a hearing. See Mass. R. Crim. P. 29 (a), 378 Mass. 899 (1979) (motion must be filed within sixty days of imposition of sentence).

[4]The defendant also claimed that his tender of a guilty plea did not permit him to be sentenced to community parole supervision for life (CPSL) because the sentence he recommended at the time of the plea did not include CPSL. In addition, he claimed that the judge sentenced him to CPSL under the mistaken belief that its imposition was mandatory when in fact it is discretionary for first-time offenders under Commonwealth v. Williamson, 462 Mass. 676, 677 (2012); that he was not given an individualized hearing to determine if CPSL was warranted in his case; that CPSL constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution; and that the District Court lacked jurisdiction to impose the sentence because the defendant was effectively sentenced to more than two and one-half years in a house of correction, beyond the limit of the District Court's maximum sentencing power, because G. L. c. 127, § 133D (c), mandates additional terms of imprisonment where a defendant violates a CPSL condition. On appeal, he replaces his cruel and unusual punishment argument with a claim that CPSL violates the Sixth and Fourteenth Amendments to the United States Constitution, as interpreted in Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny, by imposing mandatory sentence increases without requiring that the facts meriting the increase be admitted to by the defendant or submitted to a jury. We need not address these claims because we decide the case on separation of powers grounds.

[5]In a written decision denying the motion, the judge stated that, although

appealed, and we granted his application for direct appellate review to resolve the question of the constitutionality of CPSL, which is concurrently raised in *Commonwealth* v. *Parrillo, post* 318 (2014); and *Gangi* v. *Massachusetts Parole Bd., post* 323 (2014).

*Discussion.* 1. *CPSL.* CPSL subjects a sex offender to intensive "parole" supervision for life under the oversight of the parole board, which executes the CPSL sentence. See G. L. c. 127, § 133D (*a*). While serving a CPSL sentence, a sex offender is subject to a set of mandatory conditions, defined by statute and by the parole board, as well as additional conditions imposed at the parole board's discretion. See G. L. c. 127, §§ 133A, 133D (*a*), 133D ¹/₂; Massachusetts Parole Board, Intensive Parole for Sex Offenders, Executive Office of Public Safety and Security (2012). General Laws c. 6, § 178H; G. L. c. 265, § 45; and G. L. c. 275, § 18, as interpreted by our decisions, dictate when a CPSL sentence may or must be imposed.[6]

A CPSL sentence "commence[s] immediately upon the expiration of the term of imprisonment imposed upon such person by the court or upon such person's release from probation or parole supervision or upon the expiration of a continuance without a finding or upon discharge from commitment to the treatment

---

"the box marked 'accept defendant's tender' was inadvertently checked," she intended to accept the joint sentence recommendation of a probation term of six months plus the prosecutor's recommendation of CPSL. The judge also noted that the defendant was represented by counsel at the plea hearing, that defense counsel was present when CPSL was imposed, and that the defendant on the day of the plea hearing signed the document setting forth the conditions of probation, which included CPSL as a special condition.

[6]A judge *must* impose a CPSL sentence, in addition to any sentence of imprisonment or probation, where a defendant: (1) is convicted of an enumerated sex offense, and was previously convicted of an enumerated sex offense (repeat offender), see G. L. c. 265, § 45; (2) is convicted of failing to register as a sex offender, and has previously been convicted of an enumerated offense in G. L. c. 6, § 178H (*a*) (1); or (3) is convicted a second or subsequent time for failing to register and is classified by SORB as a level two or level three offender, see G. L. c. 6, § 178H (*a*) (2). A judge *may* impose a CPSL sentence where, as in this case, a defendant is convicted of a first offense of failing to register and has been classified by SORB as a level two or level three offender. G. L. c. 6, § 178H (*a*) (3). We have precluded the discretionary imposition of CPSL on two other categories of sex offenders because the procedure outlined in G. L. c. 275, § 18, was unconstitutionally vague. See *Commonwealth* v. *Pagan*, 445 Mass. 161, 173 (2005). See also *Commonwealth* v. *Parrillo, post* 318, 320 (2014).

center pursuant to [G. L. c. 123A, § 9], whichever first occurs." G. L. c. 6, § 178H (*a*) (1). See G. L. c. 265, § 45 (employing similar language). Once CPSL commences, the defendant is "under the jurisdiction, supervision and control of the parole board *in the same manner as a person under parole supervision*," and is "subject to the provisions of law governing parole *as if such person were a parolee*" (emphasis added). G. L. c. 127, § 133D (*a*). Even though a person under CPSL is treated as if he were on parole, the emphasized language of § 133D reflects that CPSL is not parole. Because this distinction is critical to our conclusion that CPSL violates the separation of powers doctrine, where parole does not, we outline the fundamental differences between parole and CPSL.

Parole provides prisoners with the opportunity to serve the balance of their term of imprisonment outside a prison provided that they comply with the conditions established by the parole board, which, pursuant to G. L. c. 27, § 4, is a board in the Department of Correction, although "not subject to its jurisdiction." "A prisoner to whom a parole permit is granted shall be allowed to go upon parole outside prison walls . . . upon such terms and conditions as the parole board shall prescribe, but shall remain, while thus on parole, subject to the jurisdiction of [the parole] board until the expiration of the term of imprisonment to which he has been sentenced . . . ." G. L. c. 127, § 130. See Black's Law Dictionary 1227 (9th ed. 2009) (defining parole as "conditional release of a prisoner from imprisonment before the full sentence has been served . . . on the condition that the parolee regularly report to a supervising officer for a specified period"). Pursuant to statutory authority, the parole board may release a prisoner and grant him parole where the board finds that he "will live and remain at liberty without violating the law and that release is not incompatible with the welfare of society." G. L. c. 127, § 130. See 120 Code Mass. Regs. § 300.04(1) (1997).

The parole board may establish and enforce conditions of release for any person who is granted parole. See G. L. c. 27, § 5; G. L. c. 127, § 130. Where a parole officer believes that a parolee has violated a condition of his release, the parole officer, with the consent of a parole supervisor, has the authority

to "issue a warrant for the temporary custody of [the] parolee for a period not longer than fifteen days." G. L. c. 127, § 149A. See 120 Code Mass. Regs. § 303.06(1) (1997). Where the parole board finds a violation of a parole condition, the board "may revoke a permit to be at liberty," G. L. c. 127, § 148, and order the parolee to be returned to prison or jail. *Id.* at § 149. Absent revocation of a prisoner's parole permit, the board's jurisdiction over the parolee ends on "the expiration of the maximum term" of the committed sentence, less any deductions for good conduct. G. L. c. 27, § 5.

With parole, therefore, the authority of the parole board is limited to the release from custody of a defendant *within* the maximum term of imprisonment imposed by the sentencing judge. The board, through its parole authority, has no power to extend a defendant's imprisonment beyond the term imposed by the sentencing judge; it has the power only to permit a defendant to serve the balance of his term of imprisonment outside the prison walls, subject to the parolee's compliance with conditions established by the board, and the power to revoke the parole permit and return the defendant to prison or jail for the balance of his term of imprisonment. See G. L. c. 27, § 5; G. L. c. 127, §§ 130, 148, 149.[7]

In contrast to parole, CPSL is a separate and distinct sentence that requires a defendant presumptively to live for the rest of his life under the supervision of the parole board, typically after the expiration of the original term of imprisonment. See G. L. c. 127, § 133D (*a*). Whereas a defendant is not on parole unless and until the parole board grants the defendant a parole permit during the term of his imprisonment, a defendant sentenced to

---

[7]Even this power of conditional release may be limited or nearly eliminated by the sentencing judge when a defendant is sentenced to State prison, because the judge must "fix a maximum and a minimum term for which [the defendant] may be imprisoned," G. L. c. 279, § 24; and a prisoner sentenced to State prison is not eligible for a parole permit until the prisoner has served the minimum term of the sentence. G. L. c. 127, § 133. Therefore, a judge who sentences a defendant to a maximum term, for instance, of five years in State prison may set a minimum term of one year and allow the parole board to determine whether the defendant will serve the remaining four years in prison or on parole, or may set a minimum term of four years and 364 days and essentially eliminate the board's authority to grant a parole permit to that defendant.

CPSL automatically becomes subject to CPSL conditions and is under the control of the parole board on the expiration of his term of imprisonment. See *id.* See also G. L. c. 6, § 178H (*a*); G. L. c. 265, § 45.

The starkest difference between parole and CPSL is in what happens after a defendant violates a condition. On finding a violation of a parole condition, the parole board "may" revoke a parole permit and order a defendant it has released from custody to return to prison or jail to serve the remainder of his original sentence. See G. L. c. 127, §§ 148, 149. In contrast, on finding a violation of a CPSL condition, the parole board "shall . . . increase[]" the "original term of imprisonment" imposed by the judge by a new mandatory term in the house of correction: thirty days for a first violation, 180 days for a second violation, and one year for a third or subsequent violation. G. L. c. 127, § 133D (*c*).[8] The parole board must continue to impose these mandatory sentences for the rest of the defendant's life whenever the defendant violates a CPSL condition.[9] In other words, with parole, the parole board has no power, after finding a violation of a parole condition, to change the term of imprisonment imposed by the judge; it may simply revoke the permit it

[8]General Laws c. 127, § 133D (*c*), provides in full: "An individual who violates a condition of [CPSL] shall be subject to the provisions of [G. L. c. 127, § 149]. If the parolee has served the entire period of confinement under his original sentence, the original term of imprisonment shall, upon a first violation, be increased to imprisonment in a house of correction for 30 days if such violation does not otherwise constitute a criminal offense. Upon a second violation, said original term of imprisonment shall be increased to 180 days in the house of correction if such violation does not otherwise constitute a criminal offense. Upon a third or subsequent violation, said original term of imprisonment shall be increased to one year in the house of correction if such violation does not otherwise constitute a criminal offense. If such violation otherwise constitutes a criminal offense, said increased term of imprisonment shall be served on and after any sentence received for commission of the new offense."

[9]CPSL is presumptively "for life," but after serving a CPSL sentence for fifteen years, an individual may petition the parole board for termination of supervision. G. L. c. 127, § 133D (*b*) (1). To prevail on a petition for termination, a defendant must demonstrate "by clear and convincing evidence, that he has not committed a sex offense or a kidnapping since his conviction, that he is not likely to pose a threat to the safety of others and that the public interest is not served by further community parole supervision over the petitioner." *Id.* at § 133D (*b*) (4). "Such termination may only occur by a majority vote of all the members" of the parole board. *Id.* at § 133D (*b*) (1).

granted to allow the defendant to serve some part of a custodial sentence outside the prison walls. With CPSL, after finding a violation of a CPSL condition, the parole board has not only the power but the mandatory obligation to increase the term of imprisonment, and thereby to order additional incarceration above and beyond the judge's original sentence.

It is the parole board's authority and duty under G. L. c. 127, § 133D (*c*), to impose mandatory periods of imprisonment that increase "the original term of imprisonment" imposed by the sentencing judge that is unique to CPSL and warrants scrutiny under the separation of powers doctrine embedded in art. 30 of our Declaration of Rights. We turn now to a discussion of what this doctrine requires.

In evaluating a presumptively constitutional statute, we ask "whether the Legislature had the power to enact the statute." *Pielech* v. *Massasoit Greyhound, Inc.*, 441 Mass. 188, 193 (2004), quoting *St. Germaine* v. *Pendergast*, 416 Mass. 698, 703 (1998). Massachusetts is one of only a few States to articulate an explicit separation of powers in our Constitution. See *Opinion of the Justices*, 365 Mass. 639, 640 (1974). Article 30 specifically prohibits the legislative, executive, and judicial branches from "exercis[ing] the . . . powers" of the other branches.[10] This line between the branches "has never been delineated with absolute precision," *LaChapelle* v. *United Shoe Mach. Corp.*, 318 Mass. 166, 170 (1945), citing *Denny* v. *Mattoon*, 2 Allen 361, 278 (1861), and we recognize that a rigid separation "is neither possible nor always desirable." *Opinion of the Justices*, *supra* at 641. See *First Justice of the Bristol Div. of the Juvenile Court Dep't* v. *Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't*, 438 Mass. 387, 396 (2003). Nonetheless, the mandate of art. 30 is clear: it forbids the legislative and executive branches from exercising powers that are entrusted to the judicial branch if that exercise "restrict[s] or abolish[es] a court's inherent powers." *Gray* v.

---

[10]Article 30 of the Massachusetts Declaration of Rights provides that "the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

*Commissioner of Revenue,* 422 Mass. 666, 671 (1996), and cases cited. See *Opinion of the Justices,* 375 Mass. 795, 813 (1978). Where a statute impermissibly allocates a power held by only one branch to another, it violates art. 30. See *Ellis* v. *Department of Indus. Accs.,* 463 Mass. 541, 549-550 (2012).

The Legislature unquestionably holds the power "to determine what conduct shall be punishable and to prescribe penalties." *Commonwealth* v. *Jackson,* 369 Mass. 904, 922 (1976), citing *Sheehan, petitioner,* 254 Mass. 342, 345 (1926). This includes, where appropriate, imposing mandatory terms of imprisonment and mandatory enhanced punishments for defendants who have prior convictions of certain offenses. See *Commonwealth* v. *Therriault,* 401 Mass. 237, 239, 242 (1987), and cases cited.

The inherent powers of the judiciary "are those whose exercise is essential to the function of the judicial department, to the maintenance of its authority, or to its capacity to decide cases." *Sheriff of Middlesex County* v. *Commissioner of Correction,* 383 Mass. 631, 636 (1981), and cases cited. At the core of the judicial function is the power to impose a sentence. See *Commonwealth* v. *Rodriguez,* 461 Mass. 256, 264 (2012) (power to sentence is "a quintessential judicial power"). See also *Commonwealth* v. *Hogan,* 17 Mass. App. Ct. 186, 192 (1983). A sentencing judge has great discretion within the statutorily prescribed range "to fashion an appropriate[,] individualized sentence." *Commonwealth* v. *Mills,* 436 Mass. 387, 399 (2002). Accord *Commonwealth* v. *Lykus,* 406 Mass. 135, 145 (1989), citing *Commonwealth* v. *Knight,* 392 Mass. 192, 196 (1984). A judicially imposed sentence is final and may not be modified by another branch. See *Hill* v. *United States ex rel. Wampler,* 298 U.S. 460, 465 (1936). See also *Rodriguez, supra* at 260.

Once a sentence is imposed, the executive branch holds the power and responsibility of executing it. See *Commonwealth* v. *Donohue,* 452 Mass. 256, 264 (2008); *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 21 (1923), abrogated on other grounds by *Commonwealth* v. *Bly,* 444 Mass. 640, 649, 651 (2005). The granting of parole, or conditional release from confinement, is a discretionary act of the parole board. It is a function of the executive branch of government with which, if otherwise constitutionally exercised, the judiciary may not interfere. *Com-*

*monwealth* v. *Amirault*, 415 Mass. 112, 116-117 (1993) ("By allowing a motion to revise or revoke sentences when the parole board does not act in accordance with a judge's expectations, the judge is interfering with the executive function. The judge cannot nullify the discretionary actions of the parole board").

Nearly ninety years ago this court summarized the division of responsibilities among the branches in the criminal context: "The definition of crimes and the establishment of penalties therefor, so far as not left to the common law, belong to the Legislature. The trial of those charged with crime and the imposition of sentences upon those convicted are a part of the functions of courts. The execution of sentences according to standing laws is an attribute of the executive department of government. This is in conformity to the sharp and strict separation of the legislative, the executive and the judicial departments of government in article 30 of our Declaration of Rights." *Sheehan, petitioner*, 254 Mass. at 345. This summary accurately captures our understanding of the separation of powers as it operates today.

The Commonwealth appears to recognize that, if the mandatory periods of imprisonment provided in G. L. c. 127, § 133D (*c*), constitute *new* sentences, the exclusive judicial power to impose sentences would be abrogated. Therefore, it argues that these mandatory periods of imprisonment are part of the *original* sentence imposed by the judge rather than new sentences. Essentially, the Commonwealth argues that, where a judge imposes a CPSL sentence, the judge actually is imposing an indefinite series of suspended sentences that must be served after the expiration of all other sentences if the parole board were to find the defendant in violation of any CPSL condition: a thirty-day suspended sentence for the first violation, a 180-day suspended sentence for the second violation, and a one-year suspended sentence for the third and each subsequent violation, all to be served in a house of correction. The Commonwealth's argument suffers from two fatal flaws.

First, it is contrary to the plain language of G. L. c. 127, § 133D (*c*), which makes clear that, where a CPSL violation is found after a defendant "has served the entire period of confinement under his original sentence, the *original term of imprison-*

*ment* shall . . . be *increased*" (emphasis added). By this language, the Legislature states that the additional periods of imprisonment provided in § 133D (*c*) are not suspended portions of the original sentence but increases to "the original term of imprisonment" in that sentence. Because § 133D (*c*) gives the parole board the authority to increase the original term of imprisonment where a defendant is sentenced to CPSL, the grant of such authority plainly violates art. 30. Once a sentence is imposed, it is final and subject to revision only by a judge, and only in limited circumstances. See *United States* v. *DiFrancesco*, 449 U.S. 117, 138-139 (1980); *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 275-276, cert. denied, 459 U.S. 864 (1982).

Second, even if, as the Commonwealth contends, the Legislature intended § 133D (*c*) to provide a shorthand way of imposing a series of suspended sentences, the statute still violates art. 30 because it places in an agency of the executive branch (the parole board) the fact-finding determination whether to execute the suspended sentences, which is a decision reserved for the judicial branch. See *Commonwealth* v. *Wilcox*, 446 Mass. 61, 65 (2006).

To illustrate this point, it is helpful to contrast a sentence of CPSL with a suspended sentence. A judge has the authority to suspend a sentence and impose a period of probation. See G. L. c. 279, §§ 1, 1A. If the defendant violates a condition of his probation, a judge adjudicates the probation revocation proceeding and "determines whether a violation in fact occurred." *Wilcox*, 446 Mass. at 65. See *Commonwealth* v. *Durling*, 407 Mass. 108, 111 (1990). Where the judge determines that the probation violation warrants the revocation of probation, the judge must impose the original suspended sentence. See *Commonwealth* v. *Azar*, 444 Mass. 72, 76 (2005); *Commonwealth* v. *Holmgren*, 421 Mass. 224, 228 (1995). If the Legislature were to enact a statute providing that, where a judge imposes a suspended sentence, an executive agency will determine whether the defendant has violated any condition of his probation and, if so, order the suspended sentence to be served, no one would doubt that the statute would violate art. 30, because the determination whether a defendant has violated a condition of probation is a

judicial function, as is the determination whether the violation justifies probation revocation and therefore execution of the suspended sentence. See *Wilcox, supra*; *Holmgren, supra*. See also Rule 7(d) of the District Court Rules for Probation Violation Proceedings, Massachusetts Rules of Court, at 97 (Lexis-Nexis 2013-2014). Characterizing this supervisory period, during which a violation of a condition can lead to the execution of a suspended sentence, as CPSL rather than as probation does not change the fundamental fact that an executive agency is determining whether a suspended sentence will be served, which is precisely the type of abrogation of the judicial function that art. 30 forbids. See, e.g., *Ellis*, 463 Mass. at 548 (Legislature impermissibly assigned to executive branch core judicial function of "disciplin[ing] a member of the bar by permanently or temporarily suspending the right of the attorney to practice"); *Doe, Sex Offender Registry Bd. No. 10800* v. *Sex Offender Registry Bd.*, 459 Mass. 603, 621 (2011) ("Legislature impermissibly interferes with judicial functions when it purports to modify the judgment of a court"). Cf. *Mistretta* v. *United States*, 488 U.S. 361, 391 n.17 (1989) (Congress may not "assign[] judicial responsibilities to the Executive or . . . unite[] the power to prosecute and the power to sentence within one Branch"). Because § 133D (c) authorizes the parole board either to increase a defendant's original sentence or, less plausibly, to execute a suspended sentence, § 133D (c) delegates adjudicatory responsibility to the parole board in § 133D (c) in a manner that clearly runs afoul of the mandate of art. 30.[11]

The exercise of judicial responsibilities by the executive branch in § 133D (c) not only violates the constitutional mandate

---

[11]Delegation to the executive branch of the fact finding integral to sentencing may also run afoul of the principles announced in *Apprendi*, 530 U.S. 466, and its progeny. Any fact that aggravates the punishment, such as by "alter[ing] the prescribed range of sentences to which a criminal defendant is exposed," must be found by a jury beyond a reasonable doubt or admitted to by the defendant. See *Alleyne* v. *United States*, 133 S. Ct. 2151, 2160 (2013), citing *Apprendi, supra* at 490. As we stated in *Pagan*, 445 Mass. at 174, "a judge may not engage in fact finding that results in the imposition of a sentence exceeding that which could be imposed in the absence of such fact or facts, even if the facts found are traditional sentencing factors." However, as earlier noted, see note 4, *supra*, we need not decide this issue because we hold the CPSL scheme unconstitutional on other grounds.

of separation of powers but also has important procedural consequences for a defendant. Because those sentenced to CPSL are treated as if they are parolees, G. L. c. 127, § 133D (*a*), they are not afforded the same right to counsel at a violation hearing, and to appellate review where a violation is found, as those sentenced to probation. A parolee may retain counsel or may request that a violation hearing be postponed in order to retain counsel, but a parolee is not entitled to appointed counsel. See 120 Code Mass. Regs. §§ 300.08, 303.08, 303.20(1)(a), 303.23(7) (1997). See also *Quegan* v. *Massachusetts Parole Bd.*, 423 Mass. 834, 840 (1996); *Baxter* v. *Commonwealth*, 359 Mass. 175, 180 (1971). If the parole board determines that the parolee has violated a parole condition, the parolee may appeal to the same hearing panel that rendered the decision or to the full board, whose decision is final, but there is no entitlement to judicial review. See 120 Code Mass. Regs. §§ 304.01(1), 304.02 (1997).[12] Further, there is no recognized right to have the parole revocation hearing open to the public.[13]

If, for example, those sentenced to CPSL were instead sentenced to lifetime probation, a defendant, if indigent, would have a right at a probation revocation hearing to appointed counsel where liberty is at issue. See *Commonwealth* v. *Patton*, 458 Mass. 119, 126 (2010); *Commonwealth* v. *Faulkner*, 418 Mass. 352, 359-360 (1994); Rule 5(a) of the District Court Rules for Probation Violation Proceedings, Massachusetts Rules of Court, *supra* at 701. The defendant would also have the opportunity for appellate review of any revocation of probation. See *Commonwealth* v. *Christian*, 429 Mass. 1022, 1022-1023 (1999) (right to appeal probation revocation order). See also *Commonwealth* v. *Ventura*, 465 Mass. 202, 205 (2013) (defendant may file motion pursuant to Mass. R. Crim. P. 30 [a], as

[12]A parolee may bring a separate, subsequent civil action as permitted by law. See, e.g., G. L. c. 211, § 3; G. L. c. 212, § 4; G. L. c. 231A, § 6. There is no right to appointed counsel in such actions.

[13]The regulations governing parole revocation hearings make no mention of a right to a public hearing. See 120 Code Mass. Regs. §§ 303.01-303.26 (1997). In addition, parole board regulations specifically indicate that parole hearings in which inmates seek to obtain a parole permit are not open to the public, with the exception of hearings for inmates serving life sentences. *Id.* at § 300.02(2).

appearing in 435 Mass. 1501 [2001], to challenge sentence imposed as consequence of probation revocation). Further, a probationer facing revocation of his probation is afforded the right to a public proceeding.[14] See Rule 5(a) of the District Court Rules for Probation Violation Proceedings, Massachusetts Rules of Court, *supra* at 701 (probation revocation hearing conducted "in open court"). Cf. *Commonwealth* v. *Caldwell*, 459 Mass. 271, 282 (2011) (implicit right to public sentencing); *Commonwealth* v. *Cohen (No. 1)*, 456 Mass. 94, 106 (2010) (right to public trial). A CPSL revocation proceeding results in consequences more closely resembling those of a probation revocation proceeding than of a typical parole revocation proceeding, and yet it does not provide equivalent procedural protections.

If the Legislature wishes to mandate a period of supervised release for sex offenders following the expiration of their sentences, and to authorize a term of imprisonment after the original term of imprisonment where a sex offender violates a condition of supervised release, the Legislature may do so without violating art. 30. Such legislation simply must require that a judge, rather than the parole board or another executive agency, determine whether a sex offender has violated a condition of supervised release, and whether a new or suspended term of imprisonment should be imposed.

Federal law authorizes a sentencing judge to impose such a term of supervised release following a term of imprisonment, with explicit special conditions of release, some imposed by statute and others left to the discretion of the judge. 18 U.S.C. § 3583(a)-(d) (2012). Although supervised release is generally for a term of years, it can be imposed for life on certain sex offenders. See *id.* at § 3583(b), (k). See also United States Sentencing Guidelines § 5D1.2(b)(2) (2013) (recommending

---

[14]Although the right to a public trial is not a procedural guarantee, it represents an additional protection that is afforded in a judicial setting but that is not typically available in executive branch settings. There are other such protections, whether constitutionally imposed or the product of centuries of tradition, such as the explanation that typically comes with a judicial ruling, the reliance on precedent, and the right to an impartial tribunal, that contribute to the over-all protections provided by judicial proceedings affording the "full panoply" of protections. See *Morrissey* v. *Brewer*, 408 U.S. 471, 480 (1972).

maximum term of supervised release for sex offenses). Like CPSL, Federal supervised release is a mandatory sentence in some circumstances, is served after a period of imprisonment, imposes similar conditions, and is revoked for similar reasons, and new terms of imprisonment may be imposed for violations of conditions. See 18 U.S.C. § 3583. But with Federal supervised release, violation proceedings are entrusted to the judicial branch. See *id.* at § 3583(e)-(i).

Unlike Federal supervised release, under G. L. c. 127, § 133D (*c*), violation proceedings for sex offenders subject to CPSL are entrusted to the executive branch. As a result, § 133D (*c*) constitutes an impermissible delegation to the executive branch of the core judicial function of imposing sentences, and therefore violates the mandate of art. 30 of the Massachusetts Declaration of Rights.

2. *Severability.* When part of a statute is held unconstitutional, "as far as possible, [we] will hold the remainder to be constitutional and valid, if the parts are capable of separation and are not so entwined that the Legislature could not have intended that the part otherwise valid should take effect without the invalid part." *Peterson* v. *Commissioner of Revenue*, 444 Mass. 128, 137-138 (2005), quoting *Boston Gas Co.* v. *Department of Pub. Utils.*, 387 Mass. 531, 540 (1982). See G. L. c. 4, § 6, Eleventh ("The provisions of any statute shall be deemed severable, and if any part of any statute shall be adjudged unconstitutional or invalid, such judgment shall not affect other valid parts thereof"). We therefore consider whether to sever the unconstitutional enforcement provisions in § 133D (*c*) from the other CPSL provisions in § 133D. The consequence of such a severance would be to leave defendants who were sentenced to CPSL subject to all the conditions of CPSL, but strip parole officers and the parole board of the power to enforce those conditions. We conclude that the provisions of § 133D (*c*), which set forth the sentences to be imposed on a finding by the parole board of a violation of CPSL, are so entwined with the otherwise valid provisions of § 133D that the Legislature could not have intended that CPSL would survive without the parole board having any means of enforcing its conditions. Therefore, we strike § 133D in its entirety and order that CPSL sentences,

whether imposed pursuant to G. L. c. 6, § 178H (*a*), or G. L. c. 265, § 45, be vacated.

When a parolee violates a condition of parole, the parole board has the authority to revoke the parole and return the parolee to prison or jail for the balance of the committed sentence. When the Legislature enacted CPSL, it attempted through § 133D (*c*) to create a comparable system of enforcement: if a defendant sentenced to CPSL violates a CPSL condition, he goes to jail, with the length of the jail term dependent only on whether it is his first or a subsequent CPSL violation. Section § 133D (*a*) provides, "Except as otherwise provided in this section, a person serving such sentence of [CPSL] shall be subject to the provisions of law governing parole as if such person were a parolee." But without the sentencing provisions in § 133D (*c*), a defendant serving a CPSL sentence would not meaningfully be subject to the provisions of law governing parole because, unlike a typical parolee, he would have served the entirety of his prison or jail term and the parole board would have no power to imprison him anew for violating a CPSL condition. Similarly, § 133D (*a*) also provides, "A person under [CPSL] shall be under the jurisdiction, supervision and *control* of the parole board in the same manner as a person under parole supervision" (emphasis added). But without the power to jail a defendant sentenced to CPSL for violating a CPSL condition, the parole board has no practical means to "control" a defendant subject to CPSL. Section 133D (*a*) further provides that "[t]he board is authorized to establish such conditions of [CPSL], on an individual basis, *as may be necessary to ensure public safety*" (emphasis added). But the parole board cannot "ensure public safety" by the imposition of CPSL conditions without the authority to enforce those conditions with the threat of jail. Therefore, § 133D (*c*) is so entwined with these provisions of § 133D (*a*) that one cannot sever subsection (*c*) without undermining subsection (*a*).

Apart from the entwined language of § 133D (*a*) and (*c*), it is plain that the Legislature would not have enacted CPSL without giving the parole board the means to jail those sentenced to CPSL for a violation of the conditions of CPSL. Without the power to jail, the parole board would be able to establish CPSL

conditions but, for all practical purposes, compliance with them would be voluntary except where the condition prohibited an otherwise criminal act, such as the use or distribution of a controlled substance. Without a valid power of enforcement, a parole officer could notify the police of a CPSL parolee's criminal violation but could only cajole a CPSL parolee to obey a noncriminal condition, because the parole board would have no power to jail the CPSL parolee for his or her violation.[15] A parole board that lacks the power to imprison would soon be viewed as a paper tiger, capable of roaring but not of biting, unworthy of either fear or respect. The disrespect that would be engendered by severance would likely be experienced most directly by parole officers performing field work, and would make their already dangerous jobs more dangerous. See R.D. Hanser, Community Corrections 139 (2d ed. 2014), quoting P. Finn. & S. Kuck, Addressing Probation and Parole Officer Stress, National Institute of Justice (2003) (discussing dangers faced by probation and parole officers).

The vacating of CPSL sentences permits the possibility of resentencing, except where barred by double jeopardy. In *Commonwealth* v. *Cumming*, 466 Mass. 467, 468-469 (2013), we allowed a judge to resentence a defendant where the judge vacated the earlier imposition of CPSL because it was unconstitutional under our decision in *Commonwealth* v. *Pagan*, 445 Mass. 161, 173 (2005). We concluded in the *Cumming* case that, where "the imposition of CPSL was part of an interdependent sentencing scheme, the judge had the authority to vacate and restructure the entire scheme, converting two of the concurrent sentences of incarceration into probationary terms, so as to effectuate the intent of the original sentencing judge." *Cumming*, *supra* at 468. The resentencing, however, could not increase the "aggregate punishment" imposed under the original sentence because of the defendant's right to be free from double jeopardy. *Id.* Resentencing is equally appropriate where the earlier imposition

---

[15]The dissent correctly notes that the parole board has the authority to "increase the severity of the conditions with which a CPSL parolee must comply" where the parolee violates a CPSL condition. *Post* at 315. But the board would lack the authority to enforce these stiffer conditions because it could not jail a CPSL parolee for violating them.

of CPSL is vacated on the different constitutional ground of separation of powers.

Resentencing is not a viable option in this case, however, because the defendant has served the probationary sentence imposed, and any resentencing therefore necessarily would violate principles of double jeopardy by increasing the "aggregate punishment" imposed under the original sentence. But in other circumstances resentencing, limited by the double jeopardy considerations set forth in *Cumming*, 466 Mass. at 473-474, could be appropriate. At such resentencing, a judge could impose a period of probation with special conditions that may protect the public and enhance the likelihood of rehabilitation to replace the vacated CPSL sentence. Those probation conditions would be enforceable by a probation officer, and violations of them would be punishable by a court.

We recognize that resentencing may impose a burden on our courts, but we doubt the burden will prove to be onerous for two reasons. First, according to the parole board, approximately 275 to 300 individuals, roughly one-half of whom are incarcerated and one-half under parole board supervision, are currently sentenced to CPSL. Resentencing those sentenced to CPSL in appropriate circumstances would be a substantial, but manageable, burden. Second, resentencing need only occur where the Commonwealth moves for resentencing; in the absence of such a motion, a judge would simply allow the defendant's motion to vacate the CPSL sentence and leave the remainder of the sentence unchanged. The Commonwealth, in its exercise of discretion and sound judgment, might not seek resentencing in every case, and should not where it is apparent, as here, that resentencing would necessarily increase the aggregate punishment, and thereby violate the defendant's double jeopardy rights.[16]

*Conclusion.* The defendant's CPSL sentence is vacated, and

---

[16]Even where resentencing is not an option because it would necessarily increase the aggregate punishment and thereby violate the defendant's double jeopardy rights, a sex offender would still be subject to registration requirements established by SORB and the criminal penalties for violation of those requirements. In addition, where a district attorney or the Attorney General believes that a sex offender whose committed sentence is expiring is a sexually dangerous person, as defined in G. L. c. 123A, § 1, he or she may seek indefinite civil commitment of the sex offender under G. L. c. 123A, § 12.

the case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

CORDY, J. (concurring in part and dissenting in part). I fully agree with the court that G. L. c. 127, § 133D (*c*), "constitutes an impermissible delegation to the executive branch of the core judicial function of imposing sentences, and therefore violates the mandate of art. 30 of the Massachusetts Declaration of Rights." *Ante* at 308. I disagree, however, with the court's conclusion that the mandatory sanctions of § 133D (*c*) cannot be severed from the significant monitoring provisions provided for in the remainder of the community parole supervision for life (CPSL) statutory scheme. The court's decision not to sever § 133D (*c*) fails to consider adequately the importance of those monitoring provisions, deprives the Legislature of the opportunity to remedy the constitutional defect as to the many CPSL sentences previously imposed, and will result in an unnecessary burden on our judicial system in what likely will be a largely futile effort to resentence hundreds of sex offenders. Consequently, I would affirm the CPSL sentence as modified by striking the mandatory sanctions of § 133D (*c*).

There is a general legislative and judicial preference in favor of severability. See *Peterson* v. *Commissioner of Revenue*, 444 Mass. 128, 138 (2005), quoting G. L. c. 4, § 6, Eleventh. When part of a statute is held unconstitutional, "as far as possible, [we] will hold the remainder to be constitutional and valid." *Peterson, supra* at 137, quoting *Boston Gas Co.* v. *Department of Pub. Utils.*, 387 Mass. 531, 540 (1982). The unconstitutional portion is severable and the remainder will be upheld "if the parts are capable of separation and are not so entwined that the Legislature could not have intended that the part otherwise valid should take effect without the invalid part." *Peterson, supra* at 137-138, quoting *Boston Gas Co., supra.*

The primary consideration is legislative intent. The intent here is clear: to ensure postincarceration, long-term monitoring of sex offenders residing in the community. The origins of CPSL lie

largely in concerns about community safety and sex offender surveillance, based in criminal justice research from the 1990s suggesting that certain sex offenders are less capable of rehabilitation than other offenders, and that lifelong supervision is necessary to protect the community from reoffense.[1,2] See Bureau of Justice Statistics, U.S. Department of Justice, Recidivism of Sex Offenders Released from Prison in 1994, at 1 (Nov. 2003); National Institute of Justice, U.S. Department of Justice, Managing Adult Sex Offenders in the Community — A Containment Approach 5, 9 (Jan. 1997). This was the concern that Massachusetts lawmakers and executive officials had in mind in 1999, when the Legislature simultaneously enacted CPSL and sought to improve the sex offender registry system. See St. 1999, c. 74, §§ 1, 2, 9. See also Committee Supports, Questions Cellucci on Sex Offender Bills, State House News Service, Mar. 15, 1999; Senate Votes to Put Sex Offenders on Parole, Boston Globe, Nov. 14, 1997, at B3. CPSL provided for the intensive oversight of sex offenders on release from incarceration and, through G. L. c. 127, § 133D (*c*), secondarily provided penalties for violating a CPSL condition when the typical parole permit revocation penalty was unavailable. St. 1999, c. 74, §§ 9, 13, 14.[3]

To be sure, § 133D (*c*) is the primary punitive sanction for a

---

[1]Concerns about sex offender recidivism grew nationwide in response to a series of highly publicized heinous sex crimes in the 1990s. See Comment, Challenging Traditional Notions of Managing Sex Offenders: Prognosis is Lifetime Management, 66 UMKC L. Rev. 629, 631 (1998). This spurred the passage of State so-called "Megan's Laws," requiring community notification of sex offenders living in the area. See *id.* at 649-650. See also Scott, Sex Offender Due for Parole, But No Place Will Have Him, N.Y. Times, Sept. 19, 1994.

[2]More recent research suggests that the recidivism rates for sex offenders are no higher than those for other categories of offenders. See Tewksbury, Jennings, & Zgoba, National Institute of Justice, Final Report on Sex Offenders: Recidivism and Collateral Consequences 56 (Sept. 2011); Wright, Sex Offender Post-Incarceration Sanctions: Are There Any Limits?, 34 New Eng. J. on Crim. & Civ. Confinement 17, 27 (2008). However, the purpose of the community parole supervision for life (CPSL) scheme is not challenged here, and it is not our role to substitute our own policy judgment for that of the Legislature.

[3]The same concerns for monitoring sex offenders who posed a high risk of recidivism led to the expansion of community parole supervision for life (CPSL) in 2006 to failure to register convictions. See St. 2006, c. 139,

violation of a CPSL sentence. However, as the legislative history and the sentiments at the time of the act's passage illustrate,[4] a CPSL sentence serves an important and central monitoring purpose, facilitating public safety by permitting and requiring intensive supervision of the sex offender population. See, e.g., St. 1999, c. 74, § 1; Committee Supports, Questions Cellucci on Sex Offender Bills, *supra*. The conditions of such supervision include participation in sex offender treatment; submission to polygraph examinations; restrictions on Internet and computer usage; prohibitions on possessing cameras and restraining devices, and obtaining any caretaking employment or activity; and global positioning system device monitoring, accompanied by specific geographic exclusion areas. See G. L. c. 127, § 133D ½; Massachusetts Parole Board, Special Conditions, 120 PAR 360.01 & Attachment A (November 2006); Massachusetts Parole Board, Intensive Parole for Sex Offenders, Executive Office of Public Safety and Security (2012). Additional conditions may include socialization and travel restrictions, such as mandatory notification of sex offender status to any potential roommates or intimate partners, restrictions on unsupervised socialization with minors, and a daily curfew. Massachusetts Parole Board, Intensive Parole for Sex Offenders, *supra.*

Absent the sanctions of § 133D (*c*), a parole officer could continue to serve a meaningful role, albeit with one less carrot

§§ 26, 27. This expansion was heralded as a step toward overcoming challenges in monitoring "even the most dangerous sex offenders." Koutoujian Announces Passage of Tougher Sex Offender Law, State House News Service, Sept. 21, 2006. Imposing CPSL on those who fail to register would enable much greater supervision of certain sex offenders and penalize defiance of registration rules. See Lifetime Parole Sought in Sex Crimes Probation Seen as More Lenient, Boston Globe, Jan. 26, 2004, at B1.

[4]The statements of numerous legislators reflect these sentiments. See, e.g., State House News Service (Senate Sess.), July 1, 1999 (Senator Robert A. Bernstein stated, "The objective is to . . . keep tabs on them. We will know where and what they are doing and who they are"); House Approves Sex Offender Registry Bill, State House News Service, June 2, 1999 (Representative Paul R. Haley stated that law would serve "the compelling need of the general citizenry to be assured those offenders posing the greatest risk are . . . closely monitored with lifetime parole"); Lifetime Parole for Sex Offenders Advances in Senate, State House News Service, Nov. 12, 1997 (Senator William R. Keating stated, "Sex offenders are never cured of their destructive impulses").

or stick. CPSL parolees, as all parolees, are subject to constraints and intrusions necessary to ensure oversight and compliance with the conditions of their supervision, including mandatory home visits by parole officers and searches based on reasonable suspicion (rather than probable cause) that a condition of parole (or CPSL) has been violated. See *Commonwealth* v. *LaFrance*, 402 Mass. 789, 795-796 (1988). See also *Samson* v. *California*, 547 U.S. 843, 854-856 (2006) (suspicionless search of parolees).[5] The parole board may also increase the severity of the conditions with which a CPSL parolee must comply, and importantly, a parole officer retains the ability to alert other law enforcement of potential threats or other criminal behavior by a CPSL parolee under his or her vigilant watch. Cf. *United States* v. *Scott*, 566 F.3d 242, 244 n.1, 246-248 (1st Cir. 2009) (parole and police officer collaboration in sharing intelligence about parolee's criminal activity and executing warrant for temporary custody pursuant to G. L. c. 127, § 149A, which led to additional criminal convictions for parolee, was appropriate and constitutional).

Given the important monitoring function of CPSL, I conclude that the Legislature would have intended for the remainder of § 133D to "stand independently" from subsection (*c*), see *Krupp* v. *Building Comm'r of Newton*, 325 Mass. 686, 691 (1950), quoting *Commonwealth* v. *Petranich*, 183 Mass. 217, 220 (1903), so that the parole board could continue to monitor CPSL parolees even if it could not penalize them with new sentences for violating the terms of their supervision. Cf. *Massachusetts Wholesalers of Malt Beverages, Inc.* v. *Commonwealth*, 414 Mass. 411, 420 (1993) ("Clearly, the Legislature would have intended the amendment to have this less than immediate effect, rather than no effect at all"). Permitting § 133D to stand without the sentencing provision of subsection (*c*) would leave a sentence to lifelong parole monitoring that is "fully operative as a law"

---

[5]Parolees also can be taken into temporary custody "[i]f a parole officer has reasonable belief that a parolee has lapsed or is about to lapse into criminal ways; or has associated or is about to associate with criminal company; or that the parolee has violated the conditions of his parole." 120 Code Mass. Regs. § 303.04 (1997). See G. L. c. 127, § 149A. We need not consider whether persons subject to CPSL but not the unconstitutional sentencing provisions would be subject to such custody.

for this purpose. See *Peterson*, 444 Mass. at 138, quoting *Immigration & Naturalization Serv.* v. *Chadha*, 462 U.S. 919, 934 (1983). It would preserve the legislative goal of sex offender monitoring while limiting only the ability of the parole board to impose new sentences for violations of CPSL conditions. This monitoring can serve the independent, nonpunitive purposes of protecting the public by tracking the whereabouts of potential reoffenders, and facilitating offender rehabilitation, by providing a watchful eye on daily activities that could trigger reoffense and by ensuring participation in sex offender treatment.

Moreover, if the unconstitutional sentencing provision was severed from the CPSL monitoring provision, nothing would prevent the Legislature from introducing an alternative mechanism for punishing CPSL violations that would comport with the parameters of our Constitution and ensure that persons already subject to CPSL conditions could be incarcerated for future violations of those conditions. Cf. *Commonwealth* v. *Brown*, 466 Mass. 676, 683, 688 (2013); *Diatchenko* v. *District Attorney for the Suffolk Dist.*, 466 Mass. 655, 672-673 (2013); *Saab* v. *Massachusetts CVS Pharmacy, LLC*, 452 Mass. 564, 572 (2008). For example, the Legislature could designate a knowing and intentional CPSL violation as a crime and articulate punishments similar to the ones in the current scheme to be imposed by a judge following a conviction. An analogous scheme in New Jersey operates in this way. See N.J. Stat. Ann. § 2C:43-6.4(d) (West 2005) ("A person who violates a condition of a special sentence [of parole supervision for life] without good cause is guilty of a crime . . . . [A] person sentenced pursuant to this subsection shall be sentenced to a term of imprisonment, unless the court is clearly convinced that the interests of justice so far outweigh the need to deter this conduct and the interest in public safety that a sentence to imprisonment would be a manifest injustice"). Nebraska also has mandatory lifetime community supervision for certain sex offenders and punishes the failure to comply with a supervision condition as a criminal offense, adjudicated by the judiciary rather than the parole board. See Neb. Rev. Stat. Ann. §§ 83-174.03 to 83-174.05 (LexisNexis 2012).

The consequences of the court's decision today are significant.

At the end of 2013, there were between 275 and 300 sex offenders with CPSL sentences; this includes offenders who are currently under CPSL supervision and those who are either incarcerated or on probation and would be released into CPSL supervision on completion of those terms. All of these offenders may now file motions to correct an illegal sentence pursuant to Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001). Reconfiguring such sentences will prove to be complicated, time consuming, and often insufficient in the trial court. See *Commonwealth* v. *Cumming*, 466 Mass. 467 (2013).

In view of the difficulties in identifying an equivalent yet constitutionally permissible alternative to CPSL, a likely consequence of this resentencing exercise will be many sex offenders simply serving their original sentences less the CPSL component, meaning that they will face lesser consequences for their actions. The legislative purpose of monitoring these offenders to ensure minimal reoffense will have been defeated.

Because I conclude that the CPSL scheme can be preserved in the absence of G. L. c. 127, § 133D (*c*), and that declining to sever this subsection goes against our preference for severability, places a significant burden on the judicial system to resentence hundreds of offenders, and unnecessarily limits the Legislature's ability to properly correct the defect we have identified, I respectfully dissent.