STANLEY S., COMMONWEALTH vs., 100 Mass. App. Ct. 298

 
 COMMONWEALTH vs. STANLEY S., a juvenile.

100 Mass. App. Ct. 298
 February 1, 2021 - October 1, 2021

Court Below: Juvenile Court, Suffolk County
Present: Wolohojian, Desmond, & Grant, JJ.

 

Motor Vehicle, Receiving stolen motor vehicle. Constitutional Law, Waiver of constitutional rights by juvenile, Admissions and confessions, Parent and child, Voluntariness of statement. Practice, Criminal, Motion to suppress, Juvenile delinquency proceeding, Admissions and confessions, Waiver, Required finding. Evidence, Age. Waiver.

A Superior Court judge erred in denying a juvenile's motion to suppress statements he made to police after he gave an incomplete name and did not answer when asked his date of birth, where the juvenile was entitled to the benefit of the doctrine precluding custodial interrogation of a juvenile who has not had the opportunity to consult with an interested adult, and where the Commonwealth made no alternative showing of circumstances demonstrating a high degree of intelligence, experience, knowledge, or sophistication on the part of the juvenile [300-307]; accordingly, this court vacated the juvenile's adjudication of delinquency on a charge of receiving a stolen motor vehicle, where, even if the juvenile's running from the car just after a State police trooper approached might have given rise to some inference that the juvenile knew that the car was stolen, there was no evidence, other than the juvenile's statements, that he intended to exercise dominion and control over the car [307-309].

COMPLAINT received and sworn to in the Suffolk County Division of the Juvenile Court Department on April 10, 2017. 

 A pretrial motion to suppress was heard by Terry M. Craven, J., and the case was tried before Thomasina Johnson, J. 

 Elena M. Rosnov for the juvenile.

 F. McDonald Wakeford, IV, Assistant District Attorney, for the Commonwealth.

 GRANT, J. This case raises the question whether a seventeen year old who gives an incomplete name to police and does not answer when asked his date of birth is entitled to the benefit of the Massachusetts doctrine that precludes custodial interrogation of a juvenile who has not had the opportunity to consult with an "interested adult." On these facts, we hold that the juvenile

 Page 299 

 should not have been subjected to custodial interrogation and that his statements to police must be suppressed. We vacate the adjudication of delinquency and remand for further proceedings.

 Background. Charged with receiving a stolen motor vehicle, G. L. c. 266, § 28 (a), the juvenile filed a motion to suppress his statements, which the motion judge denied. After a jury found the juvenile delinquent, the trial judge continued the case without a finding. See Commonwealth v. Magnus M., 461 Mass. 459, 464 (2012). The juvenile now appeals. See Commonwealth v. Oswaldo O., 94 Mass. App. Ct. 550, 553 (2018). He argues that (1) the motion judge erred in denying the motion to suppress; (2) the trial judge should have excluded his statements as involuntary, based on his trial testimony that he had smoked marijuana; and (3) the trial judge should have allowed his required finding motion because there was insufficient evidence that he possessed the stolen motor vehicle.

 Discussion. 1. Motion to suppress. a. Evidence at suppression hearing. In reviewing the denial of a motion to suppress, we accept the motion judge's findings of fact absent clear error and "make an independent determination as to the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Tremblay, 460 Mass. 199, 205 (2011). We summarize the facts found by the motion judge, supplemented by undisputed details adduced at the suppression hearing. 

 At about 11 p.m. on Tuesday, February 14, 2017, a State police trooper was alerted by a LoJack [Note 1] device to the presence of a stolen Toyota Corolla (Toyota or car) in a hotel parking lot in Boston. The trooper drove his marked cruiser past the car, walked near it, and saw two people inside. The trooper returned to his cruiser and called for backup. Just then, the two people got out of the car and ran, jumping over a snowbank. The trooper drove after them and apprehended them; they were the juvenile and another youth. [Note 2] The trooper handcuffed them and placed them in separate police vehicles. After the trooper read him the Miranda warnings, the other youth said he did not know anything about the car and had been only sitting in it. 

 Then the trooper spoke to the juvenile, reading him the Miranda warnings. When the trooper asked his name, the juvenile

 Page 300 

 replied with his first and middle names, spelling the first name and stating that the middle name was his surname. Asked for his date of birth, the juvenile did not respond. The trooper then asked who owned the car, and the juvenile replied that he had bought it for $100. When the trooper expressed doubt about that, the juvenile admitted to seeing the car parked on the street and taking the car. Asked where the ignition key was, the juvenile said he did not know. 

 The trooper entered the juvenile's first and middle names into a computer database, on the understanding that the middle name was a surname. The search yielded no data about any such person. The trooper then searched the juvenile's backpack and found school papers bearing the juvenile's first name and true surname. [Note 3] Entering that first name and surname in the database, the trooper learned that the juvenile was seventeen years old and had been charged with other crimes. After learning that the juvenile was seventeen years old, the trooper ceased questioning, told him that he would be summonsed to appear in court, and released him.

 At the suppression hearing, the Commonwealth argued that by failing to tell the trooper his surname or date of birth, the juvenile "engage[d] in deceit as to his identity," and "los[t] his privilege to the presence of an interested adult during questioning." The juvenile argued that the interested adult doctrine is a "bright-line" rule, so absent information as to his age, the trooper should have refrained from questioning him without his having had an opportunity to consult with an interested adult. The motion judge credited the trooper's testimony, including that he did not know that the juvenile was under the age of eighteen. The judge ruled that the trooper was not required to have "the skill of a carnival showman in guessing ages," and that the juvenile "gave false information to the [t]rooper about his identity and refused to give the [t]rooper his date of birth when asked to provide one," which "remove[d] this case from the analysis required by the interested adult rule."

 b. The "interested adult" rule. The Commonwealth bears the "heavy burden" to prove that a criminal defendant waived constitutional rights against self-incrimination before being subjected 

 Page 301 

to custodial interrogation. Commonwealth v. Weaver, 474 Mass. 787, 800 (2016), aff'd, 137 S. Ct. 1899 (2017). That "burden grows heavier still" in a case like this one, involving custodial interrogation of a juvenile. Commonwealth v. Smith, 471 Mass. 161, 164 (2015). General Laws c. 119, § 53, requires that children in court are "treated, not as criminals, but as children in need of aid, encouragement and guidance." See Commonwealth v. Ulani U., 487 Mass. 203, 207 (2021); Commonwealth v. Humberto H., 466 Mass. 562, 575-576 (2013). See generally R.L. Ireland, Juvenile Law § 1.3 (2d ed. 2006). 

 The Massachusetts "interested adult" rule is a common-law doctrine, created in Commonwealth v. A Juvenile, 389 Mass. 128, 131-135 (1983), as applying to juveniles between fourteen and sixteen years old, and extended to apply to seventeen year olds in Smith, 471 Mass. at 162, 166-167. The rule requires that, prior to waiving constitutional rights, a juvenile be given a "'genuine opportunity' to consult with an 'interested adult.'" [Note 4] Commonwealth v. Alfonso A., 438 Mass. 372, 384 (2003). See id. at 380-384 (police merely telling juvenile of right to contact interested adult is not enough). See Commonwealth v. Fernandes, 487 Mass. 770, 786-787 (2021). See also J.A. Grasso, Jr., & C.M. McEvoy, Suppression Matters Under Massachusetts Law § 186[a] (2020 ed.).

 "The . . . purpose of our rules pertaining to the opportunity for consultation with an adult is because 'most juveniles do not understand the significance and protective function of these rights even when they are read the standard Miranda warnings,' they 'frequently lack the capacity to appreciate the consequences of their actions,' and the opportunity for consultation with an adult 'prevent[s] the warnings from becoming merely a ritualistic recitation wherein the effect of actual comprehension by the juvenile is ignored.'" Alfonso A., 438 Mass. at 382, quoting A Juvenile, 389 Mass. at 131, 132. "[T]he naïveté, immaturity, and vulnerability of a child will imbue the objective communications of a police officer with greater coercive power." Commonwealth v. Evelyn, 485 Mass. 691, 699 (2020). In Commonwealth v. Lopez, 485 Mass. 471, 482 & n.12 (2020), the court expressed "concern" about the validity of the Miranda waiver of a seventeen year old, although that interrogation occurred prior to Smith, 471 Mass. at 162,

 Page 302 

 and so the interested adult rule did not apply. 

 Where police did not give a juvenile the opportunity to consult with an interested adult, the Commonwealth may make an "alternative showing of 'circumstances [demonstrating] a high degree of intelligence, experience, knowledge, or sophistication on the part of the juvenile.'" Alfonso A., 438 Mass. at 384, quoting A Juvenile, 389 Mass. at 134. Before the motion judge, the Commonwealth argued that it had made that showing based on the trooper's testimony that the database yielded information that the juvenile had previously "been charged with other crimes." However, the Commonwealth did not introduce any evidence of what crime or crimes those were, or the outcomes of those cases. Contrast Alfonso A., supra at 384-385 (juvenile had been arrested twice before, including for robbery, and acknowledged his familiarity with his rights from that involvement). Where the Commonwealth failed to introduce evidence to support that alternative showing, we decline to remand the case for it to have another opportunity to attempt to do so. Contrast id. at 385-386 (remanding for further findings, where Commonwealth introduced evidence on which motion judge erroneously declined to make findings).

 The Commonwealth argues that in this case the police should be excused from adherence to the interested adult rule because the juvenile gave a "false name and refused to give his date of birth" to police. In some circumstances, a juvenile's evasiveness may be some evidence of "a high degree of intelligence, experience, knowledge, or sophistication," Alfonso A., 438 Mass. at 380, quoting A Juvenile, 389 Mass. at 134, demonstrating that the juvenile could waive the Miranda rights without consulting an interested adult. That was not shown here. To begin with, it is not at all clear to us that the juvenile gave a "false" name. The names he told the trooper were his true first and middle names. [Note 5] Providing incomplete information is not necessarily the same as providing false information. The Commonwealth did not charge him with giving a false name to police. See G. L. c. 268, § 34A, inserted by St. 1998, c. 397, § 2 ("Whoever knowingly and willfully furnishes a false name . . . to a law enforcement officer . . . 

 Page 303 

following an arrest shall be punished . . . "). [Note 6] See also Commonwealth v. Clark, 446 Mass. 620, 626 (2006) ("false name is one that a person has assumed for a dishonest purpose"). At the suppression hearing, the Commonwealth did not introduce evidence that might have given rise to an inference that the name the juvenile gave was "false," such as the details of any prior encounters with police.

 As to the Commonwealth's claim that the juvenile "refused" to tell police his date of birth, in its memorandum submitted at the request of the motion judge, the Commonwealth relied on cases from other jurisdictions in which juveniles affirmatively lied to police about their ages, sometimes showing false identification cards. [Note 7] See R.L. Ireland, Juvenile Law, supra at § 1.14, at 91 (juvenile's statement may be admissible despite lack of adherence to interested adult rule if "police had made a good faith and diligent effort to determine the correct age of the accused but were frustrated in their efforts by the misstatements of the accused" [citing Stone v. State, 268 Ind. 672, 675 (1978), cert. denied, 519 U.S. 1122 (1997)]). In contrast to those cases, here, the evidence at the suppression hearing was that when the trooper asked for his date of birth, the juvenile simply did not answer; he did not lie. Of course, the juvenile had no obligation to answer. As stated in the Miranda warnings the trooper had just given him, the juvenile had the absolute "right to remain silent." Those warnings are not "merely a ritualistic recitation" -- they mean that the juvenile need not respond when asked a question by a police officer. Alfonso A., 

 Page 304 

438 Mass. at 382, quoting A Juvenile, 389 Mass. at 132. 

 The Commonwealth analogizes this case to Commonwealth v. Edwards, 444 Mass. 526, 527-528 (2005), where the court ruled that as a result of that defendant's multiple jail calls orchestrating a key witness's unavailability at trial, the witness's grand jury testimony was admissible under the doctrine of "forfeiture by wrongdoing," and the defendant lost the opportunity to cross-examine him at trial. In our view, the juvenile's lack of response when the trooper asked for his date of birth was a far cry from the defendant's witness tampering in Edwards. Remaining silent was the juvenile's constitutional right, not any sort of "wrongdoing."

 Beyond that, the Commonwealth did not prove that the trooper relied on any misrepresentation by the juvenile. According to the trooper's testimony at the suppression hearing, after the juvenile stated his name (which turned out to be his first and middle names) and did not reply to the question asking his date of birth, the trooper did not check the database immediately. Instead, the trooper "waited" to do so while he questioned the juvenile, eliciting the juvenile's statements about buying the car for $100 and finding it on the street. [Note 8] If the trooper had immediately searched the database for the names the juvenile had provided, without questioning him further, and that search did not yield the juvenile's date of birth, that might have given the trooper grounds for suspicion that the juvenile had given a false name in violation of G. L. c. 268, § 34A. [Note 9] At that point, the trooper could have explained that he needed to ascertain the juvenile's identity, because if the juvenile was under eighteen years old police would 

 Page 305 

need to contact a parent. [Note 10] See G. L. c. 119, § 67, as amended by St. 2013, c. 84, § 17 (upon arrest of child between ages of seven and eighteen, police "shall immediately notify . . . at least one of the child's parents"). [Note 11] Cf. Commonwealth v. Rise, 50 Mass. App. Ct. 836, 842 (2001) (permissible to ask fourteen year old for address because "[t]he police would not have been able to book [him] without first summoning an interested adult"). See also E.B. Cypher, Criminal Practice and Procedure § 61:20 (4th ed. 2014). But where the trooper questioned the juvenile about the stolen car without first checking the database, the trooper did not yet have reason to believe that the name the juvenile had given was inaccurate, or that his date of birth would not be ascertainable. 

 The Commonwealth argues that the interested adult rule should not apply here because the juvenile's age was not "known or knowable" to the trooper, citing cases ruling that a juvenile's age, if "known or knowable" to police, is relevant to the determination whether the juvenile is in custody. J.D.B. v. North Carolina, 564 U.S. 261, 277 & n.8 (2011) (age may inform custody analysis "so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer"). See Evelyn, 485 Mass. at 698. See also Lopez, 485 Mass. at 480-481; Commonwealth v. Bermudez, 83 Mass. App. Ct. 46, 52 (2012). Cf. Commonwealth v. Warren, 475 Mass. 530, 538 (2016) ("Unless reasonable suspicion for a threshold inquiry already exists, our law guards a person's freedom to speak or not to speak to a police officer"). The problem with relying on those cases here is that the juvenile was in custody at the time of the interrogation: after having fled from a stolen car, 

 Page 306 

he was handcuffed, put in the back of a marked State police cruiser, and given the Miranda warnings. See Commonwealth v. Matta, 483 Mass. 357, 363 (2019) (police objectively communicated that if defendant tried to leave, he would be coerced to stay). See also Commonwealth v. Spring, 96 Mass. App. Ct. 648, 652 (2019). Indeed, at the suppression hearing, the Commonwealth stipulated that the juvenile was in custody. Moreover, even where a suspect's age is not known to a police officer, age is one factor relevant to the determination whether the suspect's "waiver [of his Miranda rights] was voluntary, knowing and intelligent, and" whether his statements were voluntary. Commonwealth v. Anderson, 445 Mass. 195, 203 (2005), quoting Commonwealth v. Auclair, 444 Mass. 348, 353 (2005). See J.A. Grasso, Jr., & C.M. McEvoy, supra at § 18-7[b].

 On the evidence before us, we need not decide whether a juvenile's appearance might contribute some support to an "alternative showing of . . . a high degree of intelligence, experience, knowledge, or sophistication," demonstrating that the juvenile could waive the Miranda rights without consulting an interested adult, Alfonso A., 438 Mass. at 384, quoting A Juvenile, 389 Mass. at 134, because here the Commonwealth did not introduce evidence of the juvenile's appearance. Instead, the Commonwealth argues that the trooper could infer that the juvenile was older than seventeen because he was out at 11 p.m., but teenagers out late on a school night are precisely those "in need of aid, encouragement and guidance." G. L. c. 119, § 53. The prosecutor never introduced evidence of the juvenile's birthdate, which would have shown how close he was to his eighteenth birthday. The prosecutor never elicited how old the trooper thought the juvenile was, or a description of any characteristics that might have given rise to an inference about the juvenile's age, such as his height, weight, clothing, the deepness of his voice, or whether he had facial hair. Moreover, a juvenile's precocious physical development would not necessarily mean that the juvenile was intellectually capable of waiving the Miranda rights. At the suppression hearing seven months later, the motion judge observed that the juvenile had "the physical appearance of an adult" and "[a] reasonable person upon meeting [him] would not presume" that he was a juvenile. [Note 12] Where the appearance of a growing adolescent may change rapidly, and the Commonwealth

 Page 307 

 failed to introduce any evidence of the juvenile's appearance on the night the trooper apprehended him, the judge's observations did not suffice to meet the Commonwealth's burden. Cf. Commonwealth v. Dedomenicis, 42 Mass. App. Ct. 76, 79 (1997) (judge improperly tried to recreate patfrisk at suppression hearing; issue was whether search "was reasonable in the circumstances confronting the officer in the field, . . . not those facing the judge in the tranquility of the courtroom"). 

 The juvenile argues that we should pronounce a "bright line" rule such that any time a police officer conducts custodial interrogation of someone who unbeknownst to the officer is under eighteen years old, the statements would be suppressed. We decline to do so. There may be circumstances, on facts not proven here, where evidence including a juvenile's lies or evasive answers about his or her identity may demonstrate "a high degree of intelligence, experience, knowledge, or sophistication," Alfonso A., 438 Mass. at 384, quoting A Juvenile, 389 Mass. at 134, excusing police from adherence to the interested adult rule. On the other hand, a juvenile's lies or evasive answers may also evidence immaturity and lack of sophistication. On these facts, we do not reach that question.

 2. Voluntariness. Because we conclude that the juvenile's statements to the trooper should have been suppressed, we need not consider the argument that the trial judge should have excluded them from evidence as involuntary, based on the juvenile's subsequent trial testimony that he had smoked marijuana while in the Toyota and was "high" when he spoke to the trooper.

 3. Receiving a stolen motor vehicle. The juvenile argues that the trial judge should have allowed the motion for a required finding of not delinquent, maintaining that the Commonwealth failed to prove that he knew that the Toyota was stolen, or that he intended to exercise dominion and control over it. In reviewing the denial of a motion for required finding, we consider the facts in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). We consider all the evidence admitted at trial, including the juvenile's statements to the trooper, "without regard to the propriety of the admission." Commonwealth v. Sepheus, 468 Mass. 160, 164 (2014), quoting Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 98 (2010). See Kater v. Commonwealth, 421 Mass. 17, 18 (1995) ("If the evidence admitted at the trial was sufficient to send the case to the jury, but is insufficient to send the case to the jury if 

 Page 308 

all improperly admitted evidence is disregarded, double jeopardy principles nevertheless do not bar a retrial").

 Other than the discrepancies in the trooper's testimony about his conversation with the juvenile, see notes 8 & 10, supra, the trial evidence was essentially consistent with that adduced at the suppression hearing, with the addition of a few factual details. The Toyota's owner testified that at about dusk on the evening the juvenile was apprehended, he was delivering a pizza in the Brighton section of Boston and left the car unlocked with the keys inside; the car was stolen and driven away by a male with short curly hair who the owner could not describe further. The trooper testified that when he saw the Toyota at about 11 p.m., there were "at least two people" in it; there may have been a third person in shadows in the back seat on the passenger's side, but the trooper never saw a third person get out of the car. The trooper testified that the two people who got out of the car came from its two front doors but did not say which of them came from the driver's side.

 The juvenile testified that he spent that evening playing basketball in the South End section of Boston. Afterwards, he and the other youth smelled marijuana coming from a car parked nearby and negotiated a purchase of marijuana from the driver. The driver agreed to give the two of them a ride to a nearby McDonald's restaurant, saying that "he was headed that way anyway," so they got into the back seat of the car. After buying food at McDonald's, the juvenile and the other youth returned to the car and sat in its back seat, where they rolled and smoked the marijuana and ate the food. When the trooper drove up in his marked cruiser and looked into the car, the driver opened the door and ran. After the other youth ran, the juvenile followed him, and the two of them were apprehended by the trooper.

 At trial, the juvenile's statements to the trooper that he bought the Toyota for $100 and found it "running" on Massachusetts Avenue were the only evidence that he intended to exercise "dominion and control over" it. Commonwealth v. Darnell D., 445 Mass. 670, 673 (2005), quoting Commonwealth v. McArthur, 55 Mass. App. Ct. 596, 598 (2006). There was no evidence whether the juvenile was seated in the driver's seat. See Commonwealth v. Campbell, 60 Mass. App. Ct. 215, 217 (2003) ("Presence as a passenger does not, without more, prove possession"). Even if the juvenile's running from the Toyota just after the trooper approached might give rise to some inference that he

 Page 309 

 knew that it was stolen, there was no evidence, other than his statements, that he intended to exercise control of it. See Darnell D., supra at 674 (abandoning stolen car as police approached showed consciousness of guilt, but that alone is not enough). The juvenile's trial testimony that he got into the back seat of a stranger's car to buy marijuana and stayed in it for some period of time, although arguably implausible, did not give rise to any inference that he intended to exercise dominion and control over the car. Contrast Commonwealth v. Pridgett, 481 Mass. 437, 440 (2019) (police observations of defendant alone near stolen car, opening door, tossing something in it, and sitting in it, showed his exclusive access and thus some degree of control). The juvenile's testimony that he asked the driver for a ride to McDonald's did not show that he controlled the car, where the driver was "headed that way anyway." Cf. Darnell D., supra at 673 (insufficient evidence that juvenile in front passenger seat of stolen car directed driver, where driver's route was to pick up and drop off passengers). 

 Conclusion. The order denying the motion to suppress is reversed. The adjudication of delinquency is vacated and the verdict is set aside. The case is remanded to the Juvenile Court for further proceedings consistent with this opinion. 

 So ordered.

FOOTNOTES
[Note 1] See Commonwealth v. Ramos, 470 Mass. 740, 741 n.1 (2015). 

[Note 2] The record contains inconsistencies as to whether the other person was an adult or a juvenile. Our decision does not turn on that point, and so we refer to him as a "youth." 

[Note 3] At the suppression hearing, the juvenile's counsel argued that the search of the backpack "wasn't proper," but that if the trooper was going to search the backpack, he should have done so sooner. The juvenile does not raise any claim on appeal about the search of the backpack, so we do not reach the issue. 

[Note 4] Children under the age of fourteen cannot effectively waive their constitutional rights without actually consulting with an interested adult. See A Juvenile, 389 Mass. at 134. 

[Note 5] At trial, the juvenile testified that when the trooper asked his name, he replied with only his first and middle names because they were "easier to say" than his surname, which was "harder." The trooper testified that the juvenile's surname was "very unique." 

[Note 6] Effective April 13, 2018, G. L. c. 268, § 34A, as amended by St. 2018, c. 69, § 156, provides that an arrestee may not knowingly and willfully furnish to police certain false information, including a false date of birth, address, telephone number, "or other information as may be requested for the purposes of establishing the person's identity." We need not reach the question whether a suspect's giving a middle name to police and claiming that it was his surname would amount to false information in the latter category. 

[Note 7] The Commonwealth relied on People v. Salaam, 83 N.Y.2d 51, 54 (1993), in which the New York Court of Appeals ruled that police did not violate New York's equivalent of the interested adult rule because a fifteen year old interrogated about a brutal rape had "deceived the police" by claiming to be older and showing "false identification." The subsequent history of that case illustrates why it is so important that police scrupulously adhere to legal protections when questioning juveniles. More than a decade after their arrests, the convictions of that juvenile and his codefendants, known as the "Central Park Five," were vacated after forensic evidence and the confession of a serial rapist established that their statements to police were unreliable. See People v. Wise, 194 Misc. 2d 481, 491-493 (2002). 

[Note 8] At trial, the trooper described the sequence of the juvenile's statements differently, explaining that he had at least five conversations with the juvenile over the course of about twenty-five minutes. At the beginning of the first conversation, the trooper asked the juvenile about the car, and the juvenile replied that he did not know anything about it. "[T]owards the endpoint of that particular conversation," the trooper asked for the juvenile's name and date of birth; the juvenile replied with his first and middle names but did not give a date of birth. After unsuccessfully searching for those names in several databases, the trooper again spoke to the juvenile, and it was at that point that the juvenile said that he had bought the car for $100, and then that he had found it "running, on Mass[achusetts] Ave[nue]." 

[Note 9] The prosecutor never asked the trooper about the database he searched, or his understanding of whose data were typically found in it. See Commonwealth v. Starr, 55 Mass. App. Ct. 590, 591 n.4 (2002). 

[Note 10] At trial, the trooper testified on redirect examination that he explained to the juvenile that if police could ascertain his true identity he would be released, but if not he would be arrested, taken to the State police barracks, booked, and fingerprinted, so that his fingerprints could be compared to those in a database. From this record, it is not clear whether the trooper gave that explanation before the juvenile made any statements. In any event, the Commonwealth failed to elicit that explanation at the suppression hearing, and so we do not consider here issues that it might have raised such as whether the juvenile spoke to the trooper to avoid the prospect of police notifying a parent, as required by G. L. c. 119, § 67. 

[Note 11] Effective July 12, 2018, G. L. c. 119, § 67, amended by St. 2018, c. 69, § 76, requires police to notify a parent only when "the court or courts having jurisdiction over the offense are not in session," and to require in certain circumstances that police obtain court approval before detaining a child in a police station. 

[Note 12] The record does not reflect what clothes the juvenile was wearing at the suppression hearing; court room clothing may make an adolescent appear older. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.