APPEALS COURT 
 
 COMMONWEALTH vs. DEJUAN MITCHELL.[1]

 
 Docket:
 23-P-585
 
 
 Dates:
 July 12, 2024 - October 28, 2024
 
 
 Present:
 Sacks, Ditkoff, & Toone, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Firearms. Motor Vehicle, Seat belt. Youthful Offender Act. Search and Seizure, Reasonable suspicion. Department of Youth Services. Juvenile Court. Practice, Criminal, Motion to suppress, Sentence.
 
 

  
      Indictment found and returned in the Suffolk County Division of the Juvenile Court Department on February 2, 2022.
      A pretrial motion to suppress evidence was heard by Peter M. Coyne, J., a conditional plea of guilty was accepted by him, and a motion to revise and revoke the defendant's sentence was considered by him.
      Jason M. Stelmack for the defendant.
      Kyle E. Siconolfi, Assistant District Attorney, for the Commonwealth.
      SACKS, J.  After a Juvenile Court judge denied the defendant's motion to suppress a firearm found in his waistband during a motor vehicle stop, the defendant conditionally pleaded guilty to a youthful offender indictment charging him with unlawful possession of a firearm.  The defendant did so despite the judge having rejected his argument that he could and should be committed to the Department of Youth Services (DYS) until age eighteen, rather than age twenty-one, as the Commonwealth argued was required by G. L. c. 119, § 58 (c).  The judge committed the defendant until age twenty-one, and he denied the defendant's subsequent motion to revise and revoke, which again sought a lesser commitment.  The defendant now appeals from the orders denying his motion to suppress and his motion to revise and revoke the sentence.  Seeing no error in either order, we affirm them both.
      1.  Motion to suppress.  a.  Background.  In reviewing a ruling on a motion to suppress, "we adopt the motion judge's factual findings absent clear error," but we "independently determine whether the judge correctly applied constitutional principles to the facts as found."  Commonwealth v. Isaiah I., 450 Mass. 818, 821 (2008).  Here, our review is hampered because the parties agreed to forgo an evidentiary hearing and instead agreed to submit a Boston police report, which the judge accepted, as the sole factual basis for resolving the motion to suppress.  We caution against such an approach where, as here, a written motion to suppress does not clearly frame the legal issues to be decided and leaves open the possibility that additional factual findings based on witness testimony may be necessary or helpful.  In any event, we summarize the pertinent parts of the report.
      The report stated that on the afternoon of May 10, 2021, the defendant, then fourteen years old, was a rear passenger in a car that police stopped due to an expired registration.  While conducting the stop, police noticed that none of the three occupants was wearing a seat belt, as required by G. L. c. 90, § 13A (§ 13A).  An officer asked them for identification, used that information to conduct a check of the passengers' records, and learned that the defendant had two outstanding warrants, one of them based on pending delinquency charges for carjacking and carrying a firearm without a license.  Officers arrested the defendant and discovered a loaded firearm in his waistband.  They issued seat belt citations to the defendant, the driver (who was thirty-eight), and to the other passenger (who was nineteen).  The driver was able to reregister his car using his cell phone and thus avoided having the car towed from the scene.
      After being indicted as a youthful offender for unlawful possession of a firearm,[2] the defendant filed a motion to suppress the firearm.  He argued that, because he was fourteen, he could not be cited for a seat belt violation under § 13A, second par., and so the officer had no reason to request his identification.  Thus, he argued, the fruits of that request, including the information about his outstanding warrants that led to his arrest and the discovery of the firearm, must be suppressed.
      The judge ruled that once the officer saw the defendant was not wearing a seat belt, the officer had the authority to ask for the defendant's identification, including his name and date of birth.  The judge further ruled that the officer had authority to verify that information and "run a record check" as long as it did not prolong the stop, which the judge concluded it did not.  The judge therefore denied the motion to suppress.
      b.  Discussion.  On appeal, in seeking to suppress the fruits of the officer's request for identifying information, the defendant variously characterizes the request as part of both an unreasonable search and an unreasonable seizure.  See Commonwealth v. Almonor, 482 Mass. 35, 40 (2019) ("The Fourth Amendment and art. 14 protect individuals from unreasonable searches and seizures").  As he has not shown that a search occurred, we analyze the interaction as a seizure.  The defendant concedes that he "is not challenging either the initial motor vehicle stop or the length of the stop."[3]  We assume arguendo that the officer's request for the defendant's information, coupled with some unspecified but nevertheless "objectively communicated [message] that the officer would use his . . . police power to coerce [the defendant] to stay" until he provided it, was a seizure (albeit a brief one) of his person.[4]  Commonwealth v. Matta, 483 Mass. 357, 362 (2019).  We are not persuaded, however, that any such seizure was unreasonable, given the officer's need to ascertain the defendant's age in order to determine to whom to issue a seat belt citation.
      "A police officer generally has no right automatically to demand identification from a passenger in a motor vehicle, see Commonwealth v. Torres, 424 Mass. 153, 157-158 (1997), but he may make such a demand if he intends to issue a citation for a seat belt law violation and has a valid basis to do so."  Commonwealth v. Washington, 459 Mass. 32, 38 (2011).  "[P]robable cause is the proper standard" to justify issuance of such a citation.  Id.  In Washington, the court upheld not only the validity of such a request for identification but also what followed from it:  a warrant check, the discovery of an arrest warrant, an arrest, and the discovery of evidence.  See id. at 36-37, 40.  Similarly, in Commonwealth v. Lobo, 82 Mass. App. Ct. 803, 807 (2012), we held that where "police ha[ve] a lawful basis to cite [a] defendant for a seat belt violation" under § 13A, they may also "request and obtain his identification attendant to that civil violation," and the resulting "discovery of his identity and [any] outstanding warrants for his arrest" is permissible.  See Lobo, supra at 805 (officer "obtained identification from the defendant and conducted a warrant check that revealed two active criminal warrants").
      Under § 13A, a passenger at least sixteen years of age who rides without wearing a seat belt may be cited and fined.  In contrast, when a passenger younger than sixteen but not younger than twelve[5] rides unbelted, it is the driver rather than the passenger who may be cited and fined.[6]  Therefore, when it is unclear whether a passenger not wearing a seat belt is at least sixteen, police must ascertain the passenger's age in order to determine whether to cite the passenger or instead the driver.
      Washington and Lobo, which apparently involved seat belt citations to passengers age sixteen or older, do not directly address whether and on what showing a passenger who may be younger than sixteen may be asked for identification in such circumstances.  Washington does conclude, however, by analogy to the criminal context, that probable cause is required to issue a citation; Washington also contrasts that standard to the reasonable suspicion required for an investigatory stop.  See  Washington, 459 Mass. at 38-39 & n.14.  We think that by a similar analogy, no more than reasonable suspicion could be required to justify a police officer, when investigating a suspected seat belt law violation, to briefly detain a passenger to verify the passenger's age.  In other words, if the officer reasonably suspects that the unbelted passenger is at least sixteen, the officer may require the passenger to provide identifying information.[7]
      The defendant's appearance here supported such a reasonable suspicion and made further inquiry appropriate.[8]  Defense counsel argued to the judge at the suppression hearing that, based on the booking photograph included with the police report, the defendant appeared to be fourteen.  Similarly, the defendant's appellate brief asserts that in the photograph "he appeared to be only fourteen[] years[] old or younger."  Based on our own review of the photograph, the defendant could reasonably be thought to be sixteen.  Cf. Commonwealth v. Yusuf, 488 Mass. 379, 380-381 (2021) (in reviewing order on motion to suppress, appellate court may undertake "independent review" of video footage in record).  Also, the defendant's booking sheet lists his height as five feet, eight inches tall, and his weight as 145 pounds -- measurements not inconsistent with an age of sixteen.  See Commonwealth v. Tremblay, 480 Mass. 645, 646 (2018) (appellate court may independently review documentary evidence); Commonwealth v. Stanley S., 100 Mass. App. Ct. 298, 306 (2021) (noting physical characteristics, including height and weight, that could support reasonable inference about juvenile's age).
      On this record we see nothing unreasonable about the officer's request to the defendant.  The police are not required to rely on their own "guesstimate" of a young, unbelted passenger's age; they may seek to verify it, to ensure they have the requisite probable cause to issue a seat belt citation to the proper person.  See Washington, 459 Mass. at 38-39.  They may do so, in the first instance, by asking the passenger, the driver, or both.  Contrary to the defendant's argument, the police need not accept as true the assertions of either the passenger or the driver.[9]
      As Washington and Lobo further illustrate, it is permissible for police to seek to verify the identifying information they are given.  It was reasonable for police to do so here, notwithstanding the defendant's youthful appearance.  If a passenger is at least fourteen, the passenger may have an identification card issued by the registry of motor vehicles pursuant to G. L. c. 90, § 8E.  If a passenger is at least sixteen, the passenger may have a learner's permit.  See G. L. c. 90, § 8B.  A passenger of sixteen and one-half may have a junior operator's license.  See G. L. c. 90, § 8.  Thus, even for juvenile passengers, police may be able to verify through State databases the identifying information they are given.  Juvenile passengers may also have school-issued identification cards that police may rely upon.
      The defendant's arguments that police made mistakes of fact and law here are unavailing.  The defendant assumes that police concluded he was at least sixteen and thereby made an unreasonable mistake of fact that invalidated their subsequent actions.  See Commonwealth v. Maingrette, 86 Mass. App. Ct. 691, 694, 700 (2014) (unreasonable mistake of fact that warrant remained active invalidated fruits of arrest).  But even if that were so, what matters is what police reasonably could believe, not their subjective beliefs.  See note 8, supra.  Because police reasonably could believe that the defendant was sixteen, they could request his identification in order to determine to whom a citation should issue.
      The defendant's mistake of law argument fares no better.  The Commonwealth has correctly conceded that, once police verified the defendant was fourteen, they should not have issued the citation to him, and it was a mistake of law to do so.  See Commonwealth v. Jones, 100 Mass. App. Ct. 600, 605-606 & n.9 (2022) (stop or search premised on mistake of law is generally invalid under State constitution).  But that mistake occurred after, and so did not invalidate, the discovery of the arrest warrants and the firearm.
      For the foregoing reasons, the judge correctly denied the motion to suppress.
      2.  Disposition.  The defendant argues that the judge had the discretion to commit him to DYS until age eighteen, and need not have committed him until age twenty-one, as the Commonwealth argued and the judge agreed was required by G. L. c. 119, § 58 (c) (§ 58 [c]).  Section 58 (c) provides for "a commitment to [DYS] until [the youthful offender] reaches the age of twenty-one."  We conclude that the judge's reading of § 58 (c) was correct.[10]
      The Supreme Judicial Court has summarized the third paragraph of G. L. c. 119, § 58, as follows:  "In the case of youthful offenders, judges have the discretion to choose one of three dispositions:  [a] an adult sentence as provided by law; [b] a combination sentence consisting of commitment to DYS until the age of twenty-one together with a suspended adult sentence; or [c] commitment to DYS until the age of twenty-one."[11]  Commonwealth v. Terrell, 486 Mass. 596, 599-600 (2021).  Commitment to DYS until age twenty-one under § 58 (c) is "the least severe [dispositional] option."  Commonwealth v. Connor C., 432 Mass. 635, 638 (2000).
      But such a commitment until age twenty-one is also "[t]he minimum penalty that a judge may impose on a 'youthful offender'" (emphasis added).[12]  Connor C., 432 Mass. at 645.  "[T]he meaning of a statute must, in the first instance, be sought in language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms" (citation omitted).  Commonwealth v. Zucchino, 493 Mass. 747, 749 (2024).  Section 58 (c) is unambiguous, and it is our duty to enforce it.
      Other language in § 58 makes clear that the Legislature knew how to give judges discretion to vary the length of a DYS commitment when it wished to do so.  In the paragraph of § 58 immediately preceding the youthful offender paragraph at issue here, the Legislature provided that when a child is adjudicated delinquent on a complaint, the judge, among other options, "may commit [the child] to the custody of [DYS], but the . . . commitment period shall not be for a period longer than until such child attains the age of eighteen" (emphasis added).[13]  § 58, second par.  If the Legislature had intended to give judges similar discretion to vary the length of a youthful offender's DYS commitment, the Legislature would have used similar language in § 58 (c), but it did not.
      The statutory definition of "youthful offender" confirms our reading of § 58 (c).  In G. L. c. 119, § 52, the Legislature defined "[y]outhful offender" as "a person who is subject to an adult or juvenile sentence for having committed, while between the ages of fourteen and 18, an offense against a law of the [C]ommonwealth which, if he were an adult, would be punishable by imprisonment in the [S]tate prison," and meets any of three additional criteria.  But, importantly, the definition goes on to state that "nothing in this clause shall allow for less than the imposition of the mandatory commitment periods provided in [G. L. c. 119, § 58]."  Id.  The only "mandatory commitment periods" provided for youthful offenders in § 58 are those in § 58 (b) and § 58 (c), which refer, in identical language, to "a commitment to [DYS] until [the offender] reaches the age of twenty-one."  The definition of youthful offender disclaims any intent to allow for less than this mandatory commitment.
      In response, the defendant points to other language in § 58 (b) that, in his view, contrasts with § 58 (c) and shows that § 58 (c) confers discretion.  Specifically, he relies on § 58 (b)'s authorization of "a combination sentence which shall be a commitment to [DYS] until [the juvenile] reaches the age of twenty-one, and an adult sentence," which is to be suspended (emphasis added).  § 58 (b).  The defendant argues that the emphasized language mandates a commitment to DYS until age twenty-one and that such language is absent from § 58 (c).
      Considered in context, however, we think the phrase "shall be" as used in § 58 (b) is more naturally understood as merely introducing an explanation of the term "combination sentence" -- an explanation that is necessary because the term is not used, let alone defined, anywhere else in the General Laws.  See generally the General Laws.  Section 58 (b) means that a combination sentence consists of two components:  a commitment to DYS until age twenty-one and a suspended adult sentence.  The phrase "shall be" requires that a combination sentence include both components, but it sheds no light on the content of either component.[14]
      The defendant also relies on Commonwealth v. Dones, 492 Mass. 291 (2023), where the Supreme Judicial Court held that a judge, in committing a youthful offender to DYS custody until age twenty-one, could suspend that commitment and place the offender on probation.[15]  Id. at 291.  The court acknowledged that, although nothing in § 58 expressly authorizes such a suspended commitment, neither does anything in § 58 prohibit it.  Dones, supra at 295.  Based on this language, the defendant here argues that neither does anything in § 58 (c) prohibit a judge from committing a youthful offender to DYS until some age younger than twenty-one.
      What this overlooks is that in Dones, the court did not rely simply on the absence of language from § 58 that prohibits suspending a youthful offender's DYS commitment, but also, in part, on another statute that affirmatively authorizes judges to suspend DYS commitments "[i]n all cases."  Dones, 492 Mass. at 297, quoting G. L. c. 279, § 2.  The defendant here points to no similar language authorizing a judge to impose a shortened DYS commitment on a youthful offender.[16]
      Finally, the defendant argues that reading § 58 (c) to mandate a DYS commitment until age twenty-one would violate the separation of powers, by allowing the Commonwealth, through securing a youthful offender indictment, to increase the minimum sentence for an offense committed by a juvenile.  This, the defendant asserts, would contravene art. 30 of the Massachusetts Declaration of Rights, by allowing the executive branch to exercise the judicial branch's inherent power of sentencing defendants.
      The defendant made no art. 30 argument to the judge, however.  On appeal, he supports that argument only with citations to two easily distinguishable cases.[17]  And the argument overlooks that a judge sentencing a youthful offender retains discretion to choose among the three dispositions specified in § 58, third par.  Two of those dispositions, as set forth in § 58 (a) and 58 (b), preserve the judge's discretion to impose any adult sentence provided by law; and the third disposition, a § 58 (c) commitment to DYS, may be suspended at the judge's discretion, subject to probation conditions established by the judge.  See Dones, 492 Mass. at 292.  See also Commonwealth v. Lucret, 58 Mass. App. Ct. 624, 629 (2003) (Legislature's three alternative dispositions for youthful offenders give judge "wide latitude").[18]  We are therefore unpersuaded that merely by obtaining a youthful offender indictment, the Commonwealth exercises the court's sentencing power in violation of art. 30.[19]
      We acknowledge, as the Supreme Judicial Court has said most recently in Commonwealth v. Yasir Y., 494 Mass. 432 (2024), that G. L. c. 119, § 58, "is to 'be liberally construed so that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that, as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and guidance.'"  Id. at 438, quoting G. L. c. 119, § 53.  See Dones, 492 Mass. at 294.  Our conclusion that § 58 (c) mandates commitment to DYS until age twenty-one does not conflict with that principle.  The defendant was "committed to DYS . . . not incarcerated," Terrell, 486 Mass. at 602, and although "DYS commitment and possible confinement necessarily include[] an element of punishment . . . [n]onetheless, the juvenile justice system is primarily rehabilitative" (quotations omitted).  Id. at 603 n.13.  See Yasir Y., supra at 443-444.  That the defendant's DYS commitment is lengthy does not mean he was treated as a criminal.[20]  We further acknowledge that "[i]f the legislation is found to be ambiguous, we give the juvenile the benefit of the ambiguity."  Dones, supra.  But "[i]n this case we detect no such ambiguity."  Connor C., 432 Mass. at 642.
      Conclusion.  The orders denying the defendant's motion to suppress and his motion to revise and revoke his sentence are affirmed.
                                          
 
So ordered.
footnotes

          [1] As is our custom, we spell the defendant's name as it appears in the indictment. 
          [2] Although the indictment was preceded by a delinquency complaint that alleged, among other offenses, the unlawful carrying of a loaded firearm, the youthful offender indictment did not allege that the firearm was loaded.  The delinquency complaint was dismissed at the time of the defendant's plea of guilty to the indictment.
          [3] The defendant agrees that the stop was justified by reasonable suspicion that the car's registration had expired, and that continued seizure of the car was reasonable in order to allow the driver to renew his registration online.
               [4] Had the parties not waived an evidentiary hearing, they could have developed the record and the judge could have made findings bearing on whether a seizure occurred and on the reasonableness of the officer's actions.  Findings would have been helpful, for example, on the juvenile's appearance and on whether the juvenile provided an identification card or other document or instead merely told the officer his name and date of birth.  Findings also would have been helpful on what, if anything, the officer communicated to the defendant and the driver about his intention to verify that information, to issue citations, and to require the defendant to remain at the scene until the officer completed those tasks.
          [5] In addition, with some exceptions, a child younger than twelve must be properly secured by either a child safety seat or a seat belt, depending on the child's age and height.  See G. L. c. 90, § 7AA.  The driver may be cited and fined for a violation of this requirement.  See id.
               [6] Section 13A, second par., provides, in pertinent part:
     "Any person who operates a motor vehicle without a safety belt, and any person sixteen years of age or over who rides as a passenger in a motor vehicle without wearing a safety belt in violation of this section, shall be subject to a fine of twenty-five dollars.  Any operator of a motor vehicle shall be subject to an additional fine of twenty-five dollars for each person under the age of sixteen and no younger than twelve who is a passenger in said motor vehicle and not wearing a safety belt."
Because the maximum penalty for a seat belt law violation does not include imprisonment, a violation is a civil motor vehicle infraction (CMVI), see G. L. c. 90C, § 1, enforced by citation.  See G. L. c. 90C, §§ 1, 3.  Commonwealth v. Mansur, 484 Mass. 172, 173 (2020).  See also § 13A, third par. (referring to enforcement by citation under G. L. c. 90C, § 3).  This case does not require us to address the language pertaining to juveniles in the definition of a CMVI in G. L. c. 90C, § 1.
          [7] We find some support for this conclusion in Commonwealth v. Baez, 47 Mass. App. Ct. 115, 117-118 (1999), where an officer's reasonable suspicion that the defendant's car windows were tinted more darkly than allowed by G. L. c. 90, § 9D, justified an investigatory stop of the car to measure the tint.  This led to issuing the defendant a citation, as well as to a consent search and the discovery of a loaded firearm.  Baez, supra at 117.
                [8] Although findings of fact regarding the issue could have been helpful, we may reach this conclusion based on the undisputed facts in the record.  The existence of reasonable suspicion "is a question of law," Commonwealth v. Ford, 100 Mass. App. Ct. 712, 718 (2022), and one "that we can answer in the first instance" where the subsidiary facts are undisputed.  Id. at 719.  Our inquiry is objective, focusing on what the officer reasonably could have believed, rather than on his subjective beliefs or motivations.  See Commonwealth v. Buckley, 478 Mass. 861, 867 (2018); Commonwealth v. Santana, 420 Mass. 205, 208 (1995).
          [9] The driver will not necessarily be aware of the passenger's exact age.  At the motion hearing here, defense counsel asserted that although the driver was old enough to "have been potentially a parent to the [fourteen] year old," the driver turned out to be "a friend . . . somebody that he works with at a gym [who] was just giving him a ride home."
          [10] The issue is before us, if for no other reason, because the defendant appealed from the denial of his timely motion to revise and revoke, which repeated his argument that the judge had discretion under § 58 (c).  See Commonwealth v. Dones, 492 Mass. 291, 293 (2023) (addressing Commonwealth's appeal of judge's denial of its motion to revise youthful offender sentence).  In essence, the defendant relies on the principle that "[a] judge's failure to recognize that he or she has discretion is necessarily an error of law."  Commonwealth v. Souza, 492 Mass. 615, 626 (2023).  See Commonwealth v. Fredette, 56 Mass. App. Ct. 253, 259 n.10 (2002) ("Failure to exercise discretion is itself an abuse of discretion").  The judge stated that, if he had the discretion to impose a lesser sentence, he would at least consider the option.
               [11] Section 58, third par., provides in pertinent part:
     "If a child is adjudicated a youthful offender on an indictment, the court may sentence him to such punishment as is provided by law for the offense.  The court shall make a written finding, stating its reasons therefor, that the present and long-term public safety would be best protected by:
           "(a) a sentence provided by law; or
     "(b) a combination sentence which shall be a commitment to [DYS] until he reaches the age of twenty-one, and an adult sentence to a house of correction or to the [S]tate prison as is provided by law for the offense [subject to suspension and other conditions] . . .; or
"(c) a commitment to [DYS] until he reaches the age of twenty-one."
          [12]  Although Connor C. involved a youthful offender who had violated G. L. c. 269, § 10 (d), i.e., had committed a second firearm offense of the type set forth in G. L. c. 269, § 10 (a)-(c), the Supreme Judicial Court's "minimum penalty" language necessarily applies as well to the defendant here, whose adjudication for violating § 10 (a) was apparently his first.  Nothing in § 58, third par., itself varies a judge's youthful offender sentencing options depending on the type of offense committed.  Of course, the terms of the adult sentence that a judge may impose under G. L. c. 119, § 58 (a) and (b), will vary according to the sentences elsewhere provided for different offenses.
               [13] Different limits apply if a child's case is disposed of after the child's eighteenth or nineteenth birthday.  See § 58, second par.
          [14] The defendant also contrasts § 58 (c) with language in § 58, seventh par., providing that a person adjudicated a delinquent child by reason of a violation of certain firearms laws, including G. L. c. 269, § 10 (a), "shall be committed" to DYS and placed in a facility for specified time periods.  But this language -- in a paragraph that begins, "[n]otwithstanding any other provisions of this chapter" -- serves to make clear that, despite the discretion judges generally enjoy in crafting delinquency dispositions, a delinquency adjudication for one of the specified firearms offenses must result in a DYS commitment and placement in a facility.  For youthful offenders, however, it is already clear from the structure of § 58, third par., that a judge must choose among the three specified dispositions, a point the defendant does not dispute.  The absence of express mandatory language within § 58 (c) -- already the least severe of those dispositions -- does not give a judge discretion, after choosing the § 58 (c) disposition, to further reduce the length of the DYS commitment below what the section by its own terms requires.
               [15] The defendant in Dones, like the defendant here, was adjudicated a youthful offender on an indictment under G. L. c. 269, § 10 (a), for carrying a firearm without a license.  See  Dones, 492 Mass. at 292.
               [16] It appears that under Dones, the judge here could have suspended the defendant's commitment to DYS, but the defendant opted not to request suspension in light of his other pending cases.
               [17] The defendant relies on Commonwealth v. Cole, 468 Mass. 294 (2014), where the court invalidated a statute authorizing the parole board, upon a finding that a convicted defendant had violated community parole supervision for life, "to increase the original term of imprisonment."  Id. at 304.  This violated art. 30 because "[o]nce a sentence is imposed, it is final and subject to revision only by a judge, and only in limited circumstances."  Id.  Here, § 58, third par., rather than authorizing an executive branch agency to add to a sentence already imposed by a judge, constrains a judge's discretion regarding what sentence to impose in the first place.  The defendant also relies on Commonwealth v. Lally, 55 Mass. App. Ct. 601 (2002), which recognized that it is for a judge rather than a probation officer to set the conditions of probation.  Id. at 603.  But probation officers serve in the judicial branch, and thus Lally said nothing about the separation of powers.  See id. at 603-604.
               [18] Such discretion is not, of course, unlimited.  In Terrell, 486 Mass. at 598, 599-601, the Supreme Judicial Court held that a judge's dispositional order requiring DYS to credit two youthful offenders for "time served" was invalid, because it impermissibly interfered with the authority and discretion statutorily conferred on DYS.
               [19] The defendant further argues that there exists no offense within the concurrent jurisdiction of the District and the Superior Courts for which a minimum mandatory sentence is increased when the Commonwealth proceeds by way of indictment in the Superior Court.  From this the defendant concludes that the Legislature could not have intended a youthful offender indictment to bring about a similar result in the Juvenile Court.  Even if his premise is true, his conclusion does not follow.  It is, at a minimum, in significant tension with Connor C.'s comparative analysis of the delinquent child and youthful offender dispositions available for violations of G. L. c. 269, § 10 (d).  See Connor C., 432 Mass. at 645-646.  That is particularly so if the analysis is applied to violations of G. L. c. 269, § 10 (a).  The Legislature intended chapter 119's youthful offender provisions "to give prosecutors greater discretion when proceeding against violent juvenile offenders, and to reduce or eliminate protections previously afforded to delinquent children."  Commonwealth v. Cole C., 92 Mass. App. Ct. 653, 661 (2018), quoting Commonwealth v. Dale D., 431 Mass. 757, 760 (2000).  See Commonwealth v. Yasir Y., 494 Mass. 432, 438-439 (2024).
               [20] The court has also recognized that the liberal construction mandate of G. L. c. 119, § 53, applies only "as far as practicable" (citation omitted), Connor C., 432 Mass. at 641 n.9, and that the provisions added to § 58 in 1996 contemplated more severe dispositions for those adjudicated youthful offenders, see id. at 637-638, 642, including the "minimum penalty" of a commitment to DYS until age twenty-one.  Id. at 645.